450 So.2d 1345 (1984)
STATE of Louisiana, Appellee,
v.
Robert PETTAWAY, Appellant.
No. 16033-KA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
Rehearing Denied May 25, 1984.
Writ Denied September 14, 1984.
*1350 Wayne Blanchard, Asst. Indigent Defender, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Paul Carmouche, Dist. Atty., Catherine Estopinal, Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN and NORRIS, JJ., and McCLENDON, J. Pro Tem.
NORRIS, Judge.
Defendant, Robert Pettaway, appeals a jury conviction of attempted first degree murder in violation of La.R.S. 14:27 and La.R.S. 14:30, respectively, and a resulting sentence of imprisonment at hard labor for fifty years contending that the trial court erred:
(1) in keeping defendant physically restrained during the course of the trial;
(2) by sustaining the State's objection to counsel for defendant asking prospective jurors the following question during voire dire examination: "... do you feel you can trust Judge Scott to do the right *1351 thing and to protect Robert Pettaway from society if you find the evidence warranted a verdict of not guilty by reason of insanity?";
(3) in denying defendant's challenge for cause regarding James T. Wood, Jr.;
(4) in denying defendant's challenge for cause regarding Johnny L. Dowden;
(5) in denying defendant's challenge for cause regarding Margaret R. Rogers;
(6) by sustaining the State's objection to counsel for defendant asking prospective jurors the following question during voire dire examination: "... would you expect a mentally ill person to act peculiarly in the courtroom or do you believe that they can act normally at times, especially when they are receiving medical treatment?";
(7) in denying defendant's challenge for cause regarding Johnny J. Jackson;
(8) in denying defendant's motion for a mistrial and in denying defendant's objection with regard to the state asking prospective jurors the following question during voire dire examination: "As I indicated, Gene Watson is the alleged victim in this case. I want to ask each of you if you can promise Gene Watson that if you are convinced beyond a reasonable doubt that this defendant is guilty as charged that you can come back into the courtroom and say that. Can you say that?";
(9) in denying defendant's challenge for cause regarding Gwendolyn Falbaum;
(10) in denying defendant's challenge for cause regarding Marie H. Head;
(11) in denying defendant's challenge for cause regarding Naomi H. Alder;
(12) in denying defendant's challenge for cause regarding Terry A. Zesch;
(13) in denying defendant's challenge for cause regarding Charles L. McEldull;
(14) in denying defendant's challenge for cause regarding Thomas G. Festervan;
(15) in denying defendant's objection to Eugene Watson displaying his injuries or wounds to the jury;
(16) in denying defendant's motion for a mistrial concerning Shreveport Police Detective Don Ashley's improper and prejudicial reference to a robbery, during the state's direct examination of him;
(17) in allowing opinion testimony by police officers as to defendant's mental condition. Such testimony was allowed from the state's witnesses Frank Delafosse, Terry L. Hardin, Danny Olds, Mickey Lowe, and George C. Elkner;
(18) in denying defendant's motion for mistrial and in further allowing the state to introduce a statement made by defendant to Officer Mickey Lowe, in response to questioning by Officer Lowe, after defendant had informed Officer Lowe that he wished to invoke his right to remain silent;
(19) in denying defendant's motion for sanity commission made on December 2, 1982;
(20) in sustaining the state's hearsay objection to testimony, by persons other than the defendant, but by defense witnesses, as to defendant's statement, since those statements were not introduced to prove their truth;
(21) in interrupting the testimony of defendant's witness, Dr. Paul Ware, and in commenting upon the evidence: "I really don't think that's relevant, Doctor Ware";
(22) in allowing the state to introduce State Exhibit 42 in connection with the testimony of George C. Eikner;
(23) in commenting upon the evidence and in denying defendant's motion for a mistrial in connection with that comment concerning the admissibility of State Exhibit 42;
(24) in denying the defendant's request to present rebuttal evidence relative to the issue of his insanity;
(25) in allowing prejudicial and improper closing argument by the state and by denying defendant's motion for a mistrial relative to that argument;
(26) in enforcing the rule of sequestration against defendant's family members during closing argument;
(27) in denying defendant's Jury Charge Request Number 1;

*1352 (28) in denying defendant's Jury Charge Request Number 2;
(29) in denying defendant's Jury Charge Request Number 3;
(30) in denying defendant's pre-trial Motion to Suppress;
(31) in denying defendant's Motion for Post-Verdict Judgment of Acquittal;
(32) in denying defendant's Motion for a New Trial;
(33) in sustaining the state's objection to defendant's direct examination of Norman L. Mauroner, M.D., at the evidentiary hearing on the Motion for New Trial; and
(34) in imposing an excessive sentence in violation of Article I, Section 20 of the Louisiana Constitution of 1974.

FACTS
On March 2, 1982, while on routine patrol in uniform and in a marked police vehicle in the Queensboro Area of the City of Shreveport at approximately 7:40 a.m., Officer Eugene Watson of the Shreveport Police Department passed the 7-11 Store located at Jackson and Jewella. Because he could not see the employee in the store and things did not appear normal to him after a cursory surveillance, he pulled into the parking lot of the store and went inside. As he was entering the store, a black male, later identified to be the defendant, Robert Pettaway, was exiting the store. Officer Watson spoke to the defendant who also spoke to him. Thereafter, inside the store the defendant came up behind Watson and somehow removed his service revolver from its holster located on the right side of Watson's belt. When Watson realized that the gun had been removed, he turned and attempted to knock it from the defendant's hand. After Watson barely missed the gun, the defendant began firing. At least two bullets struck Watson before he fell over the store's counter to the floor. The defendant then leaned over the counter and shot Watson one more time. Of the five shots fired, at least three, and possibly four, struck Watson causing multiple severe internal injuries and a permanent injury to the nerve in his arm.
Although the employee of 7-11 remained on the floor behind the counter during the shooting, she managed to push the silent alarm button to alert the police, who arrived on the scene within minutes to find Watson prone on the floor, seriously injured and conscious.
The store clerk related to the police that at the time of the shooting, the defendant who was a regular customer of the store was the only other person present in the store besides Watson. After she observed Watson speak to the defendant, she heard a bump and Watson fell over the sandwich box. Then she saw the defendant with the gun shooting at Watson. The store clerk gave a description to the police.
Upon further investigation, the officers located two other witnesses who had seen the defendant exiting the store with the pistol in hand after they had heard the firing of the shots. They also described the assailant to the police and directed them to the house where the defendant was subsequently found which was located within blocks of the 7-11 store.
Upon obtaining this information from the witnesses the officers secured the residence where the defendant was purportedly located and effected his arrest without incident. While some of the officers were talking to the defendant's brother-in-law, who was also the owner of the house, the defendant exited the house and allowed himself to be placed under arrest. At the time of his arrest, the defendant had changed clothes and had thrown the gun which was used in the shooting under the house where it was later recovered.
At a police line up conducted later that morning, the defendant was positively identified by the store clerk and three witnesses. He was charged with attempted first degree murder, pled not guilty and not guilty by reason of insanity, and was tried, convicted and sentenced.

ASSIGNMENTS OF ERROR NOS. 1, 2, 4, 5, 8, 15, 17, 18, 19, 22, 23, 30 and 32
Because these assignments of error have neither been briefed nor argued, we *1353 consider them to be abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976); State v. Westfall, 446 So.2d 1292 (La.App.2d Cir. 1984).

ASSIGNMENT OF ERROR NO. 31
In connection with this assignment of error, the defendant argues that his motion for post judgment verdict of acquittal was improvidently denied because the defendant contends that he carried his burden of establishing the defense of insanity by a preponderance of the evidence.
In Louisiana, a defendant is presumed to be sane and the state is not required to prove his sanity. La.R.S. 15:432. A defendant who wishes to negate the presumption must put forth an affirmative defense of insanity and prove his insanity by a preponderance of the evidence. La.C.Cr.P. Art. 652; State v. Claibon, 395 So.2d 770 (La.1981); State v. Roy, 395 So.2d 664 (La.1981). The defendant must show that he suffered from a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question. La. R.S. 14:14; State v. Roy, supra. On appeal, the relevant inquiry by the reviewing court is whether the defendant adduced evidence of his insanity at the time of the offense such that any rational trier of fact viewing the evidence in the light most favorable to the prosecution could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Claibon, supra; State v. Roy, supra. This determination is made after reviewing all of the evidence contained within the record, including expert and lay testimony. State v. Claibon, supra.
In support of his insanity defense, the defendant offered the testimony of certain family members who were all of the opinion that the defendant was insane. Helen Pettaway, the defendant's sister, testified that after her brother returned from Grambling University he had attempted to kill his mother and had made an attempt on his brother's life. Thereafter, in 1977 the defendant was admitted to Central Louisiana State Hospital in Pineville for several weeks. She further related that in January, 1982, she had accompanied him to the Shreveport Mental Health Clinic and to the LSU Medical Center where he was admitted for one night. She also recalled an incident in January, 1982 when he took his records from the mental health clinic. She observed the defendant the night before the shooting when he was visiting their critically ill father at the hospital and found him to be extremely nervous.
Another sister, Shirley White, also testified to the change in her brother's behavior after he returned from Grambling. She observed his violent behavior on two or three occasions, including one occasion when he attempted to kill his mother. She also observed his nervous condition at the hospital when he was visiting his father. She further testified that it was apparent when the defendant was about to become enraged or violent because he would complain of headaches and stomach aches.
Julia Douglas, the sister with whom the defendant was residing at the time of the shooting, testified to the change in her brother's behavior after his return from Grambling. She related threats to his mother and an incident when he ran his car into the side of the house. She stated that Robert was nervous, tense and would have nightmares. He frequently got little sleep, pacing the floor all night and drinking coffee. However, when questioned about the defendant's behavior immediately prior to the shooting, she stated that she had observed nothing unusual. In fact, she stated that as far as she knew he had slept all night because she did not hear him pacing and that he had walked to his employer's house that morning to see if he needed defendant to work.
Annie Mae Pettaway, defendant's mother, testified that prior to defendant's return from Grambling, he was nice, quiet boy who read a lot and who had participated in high school athletics. However, after his return, she became afraid of him because *1354 of his violent outbursts. She related an incident during which he attempted to kill her, one when he beat up her automobile and one when he demolished his television. After each of these violent events he would become calm. She stated that defendant had told her that he could not control himself. However, on cross examination, she admitted that the violent outbursts which she related had occurred prior to his admission to Central in 1977 and that after his return he had not attempted to kill her again. She also admitted that in fact she has only seen him for a few minutes at a time for the last six or seven years.
Additionally, the defense presented the testimony of three psychiatrists who were all accepted by the court as experts in the field of psychiatry. Dr. Lawrence E. L'Herisson testified that he had first seen the defendant in 1977 when he transferred him to Central upon a finding that he was suffering from paranoid schizophrenia. He again saw the defendant on March 27, 1982 and April 9, 1982 after his appointment to the sanity commission. While he found that the defendant was competent to proceed to trial, he felt that he continued to suffer from this disorder. However, while stating that the defendant was a very mentally sick person, he could not be certain that his conduct in connection with the shooting was necessarily a product of a psychotic state although he acknowledged that it was a possibility based upon his medical history. He testified that he was unsure what the defendant's state of mind was at the time of the offense but that he was certain that the defendant was aware that what he had done was wrong almost immediately after the act was committed. Upon cross examination, he stated that the actions of the defendant immediately after the crime in running and disposing of the weapon were a good indication that he knew what he had done was wrong. Furthermore, the fact that he had earlier gone to see about a job indicated that the defendant knew right from wrong at that point. The defendant's statement to this witness that he was planning to give himself up when arrested by the police was an indication that he knew that there were legal consequences stemming from his actions. The fact that he indicated to the police officers upon questioning that he had not committed the act was opined to indicate some degree of deception in an attempt to avoid the consequences of the act.
Dr. Joe Ben Hayes also testified on behalf of the defense. He stated that he had examined the defendant on April 8, 1982, and found him competent to proceed to trial and to have a normal to borderline low intelligence functioning. He also diagnosed the defendant as being paranoid schizophrenic. It was the opinion of this witness that at the time of the offense, the defendant experienced an acute paranoid psychosis which resulted from a panic state at the time of the offense caused by several days of lack of sleep and rather poor mental control. He opined that it was highly probable that the defendant was suffering from a delusional psychosis at the time of the shooting and was not aware of its being wrong at the time. However, upon cross examination when informed of facts not made available to him at the time of making this determination regarding the defendant's actions immediately prior to and after the shooting, this witness stated that these facts could decrease the probability that the defendant had been experiencing such a psychotic state during the commission of the offense. Upon further questioning by defense counsel, Dr. Hayes stated that it was not inconsistent with the diagnosis of paranoid schizophrenia to have normal behavior occur after a psychotic break. He further stated that the last medication prescribed for the defendant to control his condition was of low dosage.
Dr. Paul Ware was the final defense witness. He examined the defendant on August 8, 1982. It was his firm opinion that the defendant was suffering from schizophrenia, chronic paranoid in type in partial remission at the time of the examination. He opined that because of defendant's mental disease, the defendant did not know he was doing wrong, nor understand the nature of the quality of the crime which he had committed. Thus, he was *1355 legally insane. This opinion, based on past history, symptoms which had manifested themselves prior to and after the charged offense, the interview with the defendant and the circumstances of the crime, was not changed by the defendant's actions immediately after the crime. His rational actions were explained as the result of a "release or catharsis" which may accompany a psychotic episode causing the person to think more rationally.
In response to these witnesses, the state offered the testimony of Dr. Norman L. Mauroner, a psychiatrist from the Shreveport Mental Health Clinic who had seen the defendant in the past and who had also served on the sanity commission. Based upon his two interviews with the defendant on April 9, 1982, and April 19, 1982, a review of his psychiatric medical history and the police reports of the shooting, it was his opinion that defendant was legally sane at the time of the shooting. In fact, it was his opinion that the defendant may not suffer from paranoid schizophrenia but from general agitation and nervousness although he found of some significance some reference to paranoid ideation, which is an earlier symptom of paranoid schizophrenia. He further stated that a person can have a mental illness and still differentiate between right and wrong. This witness recalled an incident which occurred in January, 1982 when defendant came to the mental health clinic in an agitated state to demand an appointment. This was the defendant's first contact with the clinic since August, 1981. Dr. Mauroner contacted the LSU Medical Center and arranged for defendant to be admitted where he stayed for a short time. Thereafter, the defendant returned to the clinic where he became upset with another doctor and took his chart. Dr. Mauroner stated that the defendant was having stressful, financial problems and that the level of dosage of medication prescribed for the defendant was a low dose for an adult. It was the firm opinion of this witness that the conduct of the defendant constituted nothing more than possible paranoid ideations which were not evidence of psychosis.
A letter dated February 1, 1982, from Dr. Ann Arretteig, a physician on the staff of the mental health clinic was introduced into evidence. This letter was written in response to the defendant's application for social security disability benefits based on his mental condition. Therein, it was stated that the information available was limited by the fact that the defendant had taken his file during a medicine check on January 20, 1982 to take it to his lawyer. When seen on that occasion, the defendant was stated to appear much calmer, logical and not psychotic. He was further described as being very manipulative and worried about financial problems caused by his inability to hold a job.
Additionally introduced into evidence were medical records from Central in 1977, a progress note in 1977 made by Dr. L'Herisson, and the clinic records. During the course of the trial, the police officers testified that defendant's behavior upon and after arrest was calm and responsive. The videotape of the line up proceeding was viewed by the jury.
In the present case, the evidence is in substantial conflict and there was evidence that certainly could have supported either verdict the jury decided to render. When there is conflicting evidence on the issue of insanity at the time of the offense, the reviewing court should accord great weight to the jury's resolution of the conflicting evidence, as long as the jury was properly instructed and no evidence was prejudicially admitted or excluded. The jury's verdict should not be overturned unless no rational juror could have found on the evidence viewed in the light most favorable to the prosecution that the defendant had failed to prove by a preponderance of the evidence his insanity at the time of the offense. State v. Sharp, 418 So.2d 1344 (La.1982).
Applying that standard of review to the evidence in this case, we cannot conclude that the evidence did not support the jury's resolution of the conflicting testimony. The burden of proof was on the defendant and the jury's finding that the *1356 defendant failed to meet this burden was not without record support. This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 3, 7, 9, 10, 11, 12, 13, AND 14
By these assignments of error, the defense contends the trial judge was in error in failing to grant eight challenges for cause made by the defense relating to prospective jurors James T. Wood, Jr.; Johnny J. Jackson; Gwendolyn Falbaum; Marie H. Head; Naomi H. Alder; Terry A. Zesch; Charles L. McEldull; and Thomas G. Festervan.
La.C.Cr.P. Art. 797 in pertinent part provides:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court;

* * * * * *
La.C.Cr.P. Art. 800 in pertinent part provides:
A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel.

* * * * * *
Under this article, the defendant need only show two things to obtain reversible error: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant; and (2) that defendant exhausted all his peremptory challenges. State v. McIntyre, 365 So.2d 1348 (La.1978).
The trial judge is vested with broad discretion in ruling on a challenge for cause, which ruling will not be disturbed on appeal absent a showing of abuse. State v. Monroe, 366 So.2d 1345 (La.1978). With regard to the trial judge's great discretion in this area, the Supreme Court noted in State v. Passman, 345 So.2d 874 (La.1977), the following:
We have repeatedly held that the trial judge is vested with broad discretion in ruling on challenges for cause, and only where it appears upon review of the voir dire examination as a whole, that the judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused, will this Court reverse the ruling of the trial judge. State v. Weathers, 320 So.2d 895 (La.1975); State v. O'Conner, 320 So.2d 188 (La.1975); State v. Frazier, 283 So.2d 261 (La.1973); State v. Willis, 262 La. 636, 264 So.2d 590 (1972).
A trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Governor, 331 So.2d 443 (La. 1976); State v. Nix, 327 So.2d 301 (La. 1976); State v. Johnson, 324 So.2d 349 (La.1976).
Relying on these basic principles, we will review the ruling of the trial court on each juror in question since the record shows the defendant exhausted all his peremptory challenges before completion of the jury panel.
We note at the outset that prospective jurors were questioned on voir dire six and *1357 sometimes seven at a time and that the remaining prospective jurors were not present when those under oath were being interrogated. There was very little one-on-one questioning and follow up questions to seek explanations to seemingly prejudicial answers were seldom used. This in some measure explains the amount of difficulty which the prospective jurors seemed to reflect in their answers concerning the insanity defense.

JAMES T. WOOD, JR.
Defendant complains of the denial of a challenge for cause of this prospective juror. He argues that, because of this ruling he was compelled to exercise one of his peremptory challenges to excuse Mr. Wood and was thereby deprived of one of his twelve peremptory challenges.
Defendant contends that this juror's answers to defense counsel's questions showed he had a bias against the insanity defense and could not reasonably have been expected to apply the law regarding it. At one point in voir dire, Wood stated that he felt a person who did something wrong because he was insane or suffering from a mental disease should be punished anyway. When asked later if he felt a person should be punished for their crimes even if not responsible for his actions, Wood answered "To a certain extent, yes." Wood stated his willingness, however, to apply the law as the judge instructed him. Admittedly, Wood had some difficulty with the insanity defense and stated that he felt that it should be done away with. When informed by defense counsel that the defense had the burden of proving insanity only by a preponderance of the evidence as compared to the state's burden of proof of guilt beyond a reasonable doubt, and then asked if the fact the state's burden was heavier than the defendant's struck him as being unfair in any way, Wood replied "I think so."
Although juror Wood expressed some difficulty with the insanity defense and defendant's burden of proof with regard thereto as these matters were being discussed with him by defense counsel, he did state that he could accept and apply the law as the judge instructed him. He further stated that if the defendant carried his burden of proof on the issue of insanity by a preponderance of the evidence that he would be able to return a verdict of not guilty by reason of insanity. Subsequently, Wood again promised to hold the state to its burden of proof beyond a reasonable doubt, and reiterated that he would only require the defendant to prove his insanity by a preponderance of the evidence.
Viewing the voir dire examination of Wood as a whole, we conclude that although this prospective juror initially expressed reservations about the insanity defense, his subsequent answers after further examination and instruction convinced the trial judge that he would properly apply the law as the judge instructed him on that issue. The Supreme Court has held that the mere fact that a juror believes that insanity at the time of the crime would be difficult to prove, is not grounds for excusal for cause. State v. Daigle, 344 So.2d 1380 (La.1977). We conclude that the trial judge did not abuse his discretion in denying the challenge for cause. Compare State v. Daigle, supra; State v. McIntyre, supra. This assignment is without merit.

JOHNNY J. JACKSON
This prospective juror was accepted by the state but was challenged for cause by the defense. Defendant assigns the refusal to grant his challenge for cause as error. This juror also had difficulty with the concept of the insanity defense. He stated in response to defense counsel's questions that he believed a person who did something wrong should be punished even though he was insane or suffering from a mental disease. Jackson stated he felt there should be changes made in the insanity law and that the insanity defense should be done away with. He voiced concern about a finding of not guilty by reason of insanity and the possibility that the defendant would later "get out" and do it again. Jackson at one point expressed he would have a problem following the law and indicated the differences in the state's burden *1358 of proof beyond a reasonable doubt as to defendant's guilt as compared to the defense's burden of proof of insanity by preponderance of the evidence would "make a difference to him". What this difference was was not explored further. Jackson also had a relative who was a police officer [the exact relation was not asked] who was killed and he followed the trial of the assailant who also pled not guilty by reason of insanity. Jackson admitted that he had known this relative well and played softball with him during the summer and stated that he did not like the insanity plea in that trial but couldn't say anything about it. Jackson did express, however, that he felt that he was in such a fair and impartial state of mind that he would be satisfied to have a jury made up of people possessing his state of mind to judge if he or one of his loved ones was on trial. He said his state of mind was still the same even considering his views on the insanity defense.
Upon being questioned by the court, Jackson stated that he believed he could apply the law as the court instructed him even though he might disagree with parts of it. He further told the court that he could decide the case based on evidence adduced in court and not on past experiences or what someone might expect of him. Jackson further informed the court he believed he could return a verdict of not guilty by reason of insanity if he found that the defense proved by the requisite preponderance of the evidence that the defendant was, at the time of the commission of the crime, suffering from a mental disease or defect that made him incapable of knowing right from wrong. After extensive questioning of Jackson, the trial judge stated "I am satisfied from the answers that Mr. Jackson has given, although he obviously has some disagreements with some of the laws on insanity, that he has agreed to apply the law as instructed by the court. I do not find that his answers on voir dire or the answers to my questions cause him to have such bias, prejudice, or other reason to be dismissed for cause".
In State v. Jones, 381 So.2d 416 (La.1980), the Supreme Court found no abuse of discretion in the refusal to excuse a prospective juror whose husband had been the victim of a crime similar to that for which the defendant was on trial. It has also been held that the declaration of a prospective juror that she was previously the victim of a crime similar to that for which the defendant stood charged did not render her incompetent to serve on the jury. State v. Collins, 359 So.2d 174 (La. 1978). We conclude that Jackson's relationship to a police officer who was slain and whose assailant at trial relied on a plea of not guilty and not guilty by reason of insanity is not in and of itself grounds for a challenge for cause.
Therefore, Mr. Jackson's responses during the entire voir dire must be examined to determine whether he exhibited impartiality notwithstanding his relationship to a victim of a similar crime and his difficulty relative to the insanity defense.
While Jackson persisted in his belief that the insanity defense should be changed, his final position after extensive questioning by the trial judge shows that he would follow the law as instructed by the court and that he would judge the defendant with an impartial mind based on the evidence presented at trial. The trial judge had the opportunity to observe Jackson while evaluating his answers to the entire voir dire examination, and certainly he is in the best position to judge the prospective juror's impartiality, ability, and willingness to follow the law. According the trial judge's assessment of Jackson's qualification to serve with the proper weight, we conclude that the trial judge did not abuse his discretion in denying the challenge for cause. This assignment is without merit.

GWENDOLYN FALBAUM
After denial of a challenge for cause, defendant used a peremptory challenge excusing this particular juror. Defendant asserts that the voir dire establishes her inability to rest her judgment on the evidence alone.
This juror also had some difficulty with the insanity defense. When asked if she *1359 could accept the law that provides for a person to be treated if they were found not guilty by reason of insanity, she replied "I think something should happen to him. I don't feel he should be allowed to be loose." She acknowledged in response to defense counsel's questions that it would be possible that she would have trouble with a not guilty by reason of insanity verdict because of her concern that defendant would be back on the street. Prior to defense counsel's injection of the issue that defendant might be back on the street again, which caused this juror a normal reaction of concern, Mrs. Falbaum indicated affirmatively that she could follow the law on insanity according to the judge's instructions and that she could base her verdict on the evidence introduced in court. This prospective juror, upon further questioning and instruction, stated she did not think the insanity defense should be done away with, that she could accept the preponderance of the evidence burden of proof on that issue, and that she could trust the legal system to protect society from defendant if she returned a verdict of not guilty by reason of insanity. Finally, Mrs. Falbaum stated that she would be able to return a verdict of not guilty by reason of insanity if the evidence so warranted and she agreed to apply the law as instructed by the court and be an impartial juror.
When viewed as a whole, the voir dire examination of Mrs. Falbaum indicates that she could be a fair and impartial juror. Although she voiced a concern seemingly prejudicial to the defense, subsequently, on further inquiry and instruction she demonstrated a willingness to decide the case impartially according to the law and evidence. State v. Passman, supra. The ruling refusing to excuse her for cause did not constitute error. This assignment is without merit.

MARIE H. HEAD
Defendant assigns as error the failure to excuse for cause prospective juror Marie H. Head. Following this denial, defense counsel peremptorily excused her.
Defendant complains that a portion of this prospective juror's voir dire indicates that she would have difficulty limiting her decision to the evidence adduced at trial.
This prospective juror indicated to defense counsel, when asked if she could put aside what she had heard about the case from the media and base her decision upon the evidence, that one cannot completely forget everything he or she has heard. She also stated she was pretty angry about the incident when she first heard about it and felt that was a normal reaction. When asked by defense counsel if this admittedly normal reaction would affect her in reaching a verdict, she answered "I don't know. Like I say, you can't completely blank it out of your mind and have an open mind."
Mrs. Head also expressed an opinion that someone who committed a wrong because he was insane should be confined for his safety as well as the safety of others, felt that this confinement should be for a long time, and assuming the confinement would be for a long time she could find an insane person not guilty by reason of insanity. When informed that she had no input as to the length of confinement should defendant be found not guilty by reason of insanity, she stated she "could try" to apply the law on insanity and "maybe" she would be afraid to return a verdict of not guilty by reason of insanity because of her concern that defendant would be back on the street.
Prior to this line of questioning by defense counsel, Mrs. Head had affirmatively stated that she could follow the law on insanity according to the judge's instructions. Subsequent to the portion of her voir dire that defendant complains of and upon further questioning and instruction, Mrs. Head stated she did not think the insanity plea should be done away with, that she could accept the preponderance of the evidence burden of proof regarding the insanity plea and that she could trust the legal system to protect society from defendant if she returned a verdict of not guilty by reason of insanity. She also stated she could apply the law pursuant to the judge's instructions and that if the evidence warranted it she could return the unpopular verdict of not guilty by reason *1360 of insanity. She considered her state of mind to be such that she would be satisfied to have a jury of persons in her state of mind sit on her jury or on a jury for her loved one.
Mrs. Head, under questioning by the court, convinced the trial judge that she could and was willing to set aside anything she had read or seen about the case and base her decision as a juror on proper evidence presented in the courtroom. She reiterated to the trial judge that she could return a responsive verdict if the evidence so warranted and that she understood and would hold the state and the defendant to their respective burdens of proof. Based on her answers, the trial judge was satisfied regarding Mrs. Head's ability to serve with impartiality and denied defendant's challenge for cause. When the voir dire examination of Mrs. Head is considered as a whole as per Passman, we conclude that the trial judge did not abuse his great discretion. This assignment of error lacks merit.

NAOMI H. ALDER
Defendant asserts that the denial of a challenge for cause issued to Mrs. Alder was error. Mrs. Alder was sworn and served as a juror since defendant had exhausted his peremptory challenges.
Defendant contends that Mrs. Alder was not impartial in that she could not put her preconceived notions regarding the insanity defense aside during the trial. Once again, Mrs. Alder's concern surfaced over the possible release of a person found not guilty by reason of insanity, a natural concern for a lay person not familiar with the law as well as for those involved in the legal system. Mrs. Alder did not think a person found not guilty by reason of insanity should be "let go". She also stated "I guess so" when asked if she could follow the judge's instructions on the law and apply the preponderance of the evidence standard to defendant's proof of insanity and not some higher standard.
Immediately after Mrs. Alder stated her concern about the verdict of not guilty and not guilty by reason on insanity, she responded to defense counsel that she would "make the right decision" if defendant's insanity was proven by a preponderance of the evidence but she would still be concerned. Previously, in her examination, Mrs. Alder had stated that she did not believe the insanity defense should be repealed. She stated that she could put away any preconceived ideas and apply the law. She responded that she could trust the system to protect society should defendant be found not guilty by reason of insanity. The trial judge questioned Mrs. Alder himself, and she told him she could follow the law as he instructed her, could put aside any preconceived notions she might have had and could reach a proper verdict. The trial judge was satisfied from her responses that she could judge defendant fairly and impartially.
Considering the voir dire examination as a whole, the trial judge's decision refusing to excuse Mrs. Alder was not an abuse of his great discretion or unreasonable. This assignment lacks merit.

TERRY A. ZESCH
By this assignment of error, defendant claims that his challenge for cause of prospective juror Terry A. Zesch was improvidently denied. Mrs. Zesch indicated problems with the insanity defense and felt it would be difficult to prove. She indicated it would be hard for her to believe in "momentary" insanity and stated that while she would not automatically reject the defense of insanity it would be hard for her to apply. When informed by the defense that while the state must prove guilt beyond a reasonable doubt, the defendant need only prove insanity by a preponderance of the evidence, a "much lower standard", she stated she felt it unfair to place a heavier burden on the state. She then indicated she would require the defendant to satisfy the heavier standard of proof.
The mere fact that a juror believes that insanity at the time of the offense is difficult to prove is not ipso facto grounds for excusal for cause. State v. Daigle, supra.
*1361 Looking at this juror's voir dire as a whole, we find that she stated she thought she could follow the law as given by the judge on the insanity defense, she did not believe the insanity defense should be repealed, she could trust the legal system to protect the public from the defendant if he was found not guilty by reason of insanity, she could return the verdict of not guilty by reason of insanity if the evidence warranted it, and she would only require the defendant to prove the insanity defense by a preponderance of the evidence.
Under extensive questioning by the court, Mrs. Zesch again stated that she understood, accepted, and could apply the state's burden of proof of beyond a reasonable doubt and the defendant's burden of proof as to the insanity defense by a preponderance of the evidence. She stated she could make the correct decision using the proper guidelines relative to the defense of insanity. Mrs. Zesch repeatedly stated that she would apply the law as given by the judge and would be a fair and impartial juror.
Considering the voir dire examination of Mrs. Zesch as a whole it is apparent to us that Mrs. Zesch indicated that she would be fair as a juror and we conclude that the trial court's decision refusing to excuse her for cause was correct and that this assignment lacks merit.

CHARLES L. McELDULL
Because defendant's peremptory challenges had been exhausted, McEldull was seated as the eleventh juror after the trial court denied defendant's challenge for cause. Defendant assigns the denial as error contending that McEldull could not accept the preponderance of the evidence burden of proof as to the insanity defense and further complains he indicated he would expect a mentally ill person to act peculiarly.
McEldull stated he felt the lesser burden of proof by a preponderance of the evidence with regard to the insanity defense was unfair and at one point stated he would have to be satisfied beyond a reasonable doubt that defendant proved his insanity at the time of the crime before he could return a verdict of not guilty by reason of insanity.
However, notwithstanding his earlier statement, McEldull, on further inquiry and instruction by the court, convinced the trial judge that he was willing and able to decide the case impartially according to the law and evidence. McEldull acknowledged that he understood the law only requires that a person be insane at the time of the offense. He further stated that he could put aside any preconceptions he might have towards the insanity defense and follow the law as given by the judge and apply that law to the facts of this case. McEldull reassured the trial judge that even though he might disagree with the law, he honestly felt he was capable of applying the law as he was instructed. He specifically agreed not to hold the defense to a burden greater than the law requires. He further assured the trial judge that he felt sufficiently committed to his obligation as a juror in this case to the extent that he would feel comfortable having himself or a loved one judged by a juror with his frame of mind.
State v. Zeno Davenport, 445 So.2d 1190 (La.1984), involved a juror who vacillated in his responses regarding the presumption of innocence and who was to carry the burden of proof. The Supreme Court found that although the juror waivered in his responses, the fluctuations in his testimony were not so repeated or pronounced as to make the court's acceptance of his final indication that he would follow the law unreasonable.
Likewise, Mr. McEldull oscillated in his responses concerning the burden of proof. However, he firmly agreed to apply the law as instructed in spite of his personal beliefs. We believe that the fluctuations in his testimony, like the testimony of the juror in Davenport, were insufficient to sustain a challenge for cause. We find no abuse of the trial court's discretion in this denial of the challenge for cause. This assignment lacks merit.

*1362 THOMAS G. FESTERVAN
Defendant urges reversal of his conviction and sentence based on the trial judge's failure to excuse juror Thomas G. Festervan for cause. Since defendant had exhausted his peremptory challenges, Festervan was seated and sworn as a juror completing the panel of twelve. Defendant contends that Festervan would be unable to find him not guilty by reason of insanity if he was shown to be insane only at the time of the offense.
The voir dire reveals that Festervan had difficulty with the insanity defense especially with the idea of temporary insanity, i.e. being insane one moment and sane the next. At one point, obviously confused as to the definition of insanity, he indicated he couldn't follow the law with respect thereto and could not return a verdict of not guilty by reason of insanity. When defense counsel explained that the plea was not temporary insanity but not guilty by reason of insanity and all that the law required the defendant to prove by a preponderance of the evidence was that he was insane at the time of the offense, Festervan indicated he understood. Festervan did agree that suffering from a mental illness or disease might make a person less able to tell right from wrong, that mental illness could be treated by drugs, that an insane person who does something wrong should not be punished and that a person should not go to prison if not responsible for his actions. Festervan then indicated that he understood all defendant had to prove was that because of some mental defect or disease that he was insane at the time of the incident, further stating that he could follow the law as instructed by the court and could put aside any preconceived notions about the insanity defense. Festervan further stated he could accept the defendant's burden of proof on the insanity defense as being by a preponderance of the evidence. The court questioned Festervan at length about his answers before ruling on the challenge for cause. Festervan reassured the judge that he could return a not guilty by reason of insanity verdict if the evidence warranted it. He agreed that even though he might disagree with portions of the law, he could apply the law as instructed. Festervan had earlier stated that he could trust the judge to do the right thing and see that society was protected from the defendant in the event a verdict of not guilty by reason of insanity was returned. He stated also that he could return an unpopular verdict if the evidence so warranted. Festervan agreed that he was in such an impartial and fair state of mind that he would be satisfied to have himself or a loved one judged by a jury composed of persons with his state of mind. He agreed to promise defendant that he would hold the state and defendant to their respective burdens of proof.
The trial judge noted that although Festervan had given conflicting responses, he was satisfied that Festervan had agreed to accept the law as instructed and apply that law to the facts of the case. Considering the whole of Mr. Festervan's voir dire, we conclude that the ruling that Mr. Festervan was competent to serve is not arbitrary or unreasonable. The trial judge did not abuse his discretion in denying the challenge for cause. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment, the defendant contends that the trial court erred in sustaining the state's objection to a question posed by defense counsel during voir dire:
Would you expect a mentally ill person to act peculiarly in the courtroom or do you believe that they can act normally at times, especially when they are receiving medical treatment?
The state's objection to this question pertained only to that portion referring to conduct "in the courtroom". Defendant contends that the sustaining of this objection constituted prejudicial error by unreasonably restricting his right of voir dire examination in that it unduly limited his development of challenges for cause, as well as information which may have warranted use of peremptory challenges. It is contended that a response to that particularly worded question would indicate that *1363 the prospective juror did or did not expect not only proof of the defendant's insanity at the time of the offense but also some indication of his insanity as he sat in the courtroom.
An accused has the right of a full voir dire examination of prospective jurors. La. Const.1974, Art. I, § 17. Because this right has a constitutional basis, wide latitude should be given the defendant to test prospective jurors' competence and impartiality. State v. James, 431 So.2d 399 (La.1983). Whether a particular question is essential to a full voir dire is within the discretion of the trial judge whose rulings will only be disturbed upon a clear abuse of that discretion. State v. Parker, 416 So.2d 545 (La.1982). See also La.C.Cr.P. Art. 786. When the question arises whether voir dire examination has been unduly restricted, the disallowance of a proper question is not automatically reversible. In evaluating the fairness of the ruling, the entire examination must be considered. State v. Robinson, 404 So.2d 907 (La.1981).
Implicit within the question as allowed is the inclusion of the defendant's actions "in the courtroom". Certainly had a juror indicated that he would expect some sign of the defendant's insanity at times removed from the time of the offense, then the defense would be put on notice that the juror expected proof of the defendant's insanity at times other than the time of the offense. Furthermore, the defense set forth was not limited to the time of the offense but strongly urged that the defendant had been insane since at least 1977. We conclude that the defendant was able to make his point by the question as rephrased after the court's ruling. Accordingly, the ruling of the trial court was not unduly restrictive of the defendant's right to a full voir dire examination. Compare State v. May, 339 So.2d 764 (La.1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 16
In connection with this assignment of error, the defendant argues that the trial court erred in denying his motion for mistrial based upon a statement made by a police officer during his testimony. This issue arose in connection with the questioning of Officer Don Ashley, who was asked how he happened to arrive at the scene of the crime. His response was "I was in route to the station when a broadcast was put out over the radio that the robbery and shooting had taken place at that 7-11 ..." Defendant contends that because no robbery occurred, this was an impermissible reference to other crimes which warranted the granting of a mistrial.
After defendant's objection, the jury was removed and the motion for mistrial was made. In response, the state explained that when the silent alarm button at the store was pushed, the call was automatically reported as a robbery call. The state further conceded that no robbery had occurred and asked that the witness be given the opportunity to clarify this statement. Upon a finding that no prejudice had occurred, the trial judge denied the motion and informed defense counsel that he would only admonish the jury if the state did not clarify this statement. Defendant did not request an admonition but nevertheless objected to the ruling. After the jury's return, the witness went on to state that after he had determined what had actually occurred, he became aware that there had been no robbery but rather the shooting of the officer.
A direct or indirect reference to a crime committed or alleged to have been committed by a defendant, as to which evidence would be inadmissible made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument would require a mistrial on motion of the defendant. La.C. Cr.P. Art. 770(2). A police officer is not a "court official" for the purposes of La.C. Cr.P. Art. 770; therefore, La.C.Cr.P. Art. 771 is applicable. State v. Carter, 412 So.2d 540 (La.1982). Accordingly, the usual appropriate remedy for inappropriate remarks made by a police officer is an admonition to the jury to disregard the remark. State v. Harper, 430 So.2d 627 (La.1983). *1364 Where the answer is unresponsive and does not refer to the defendant's commission of another crime, the trial court does not err in overruling a motion for mistrial. State v. Hill, 434 So.2d 428 (La.App.2d Cir.1983).
In this case, by virtue of the witness's clarification of his earlier statement no admonition was necessary to insure that the defendant received a fair trial. There was never an actual reference made to any crime committed by the defendant. Even had such an assumption resulted from the initial statement, it was promptly rectified. There has been no showing of prejudice and the trial court's ruling was not erroneous.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 20
In connection with this assignment, defendant argues that it was error for the trial court to sustain the state's hearsay objections to the testimony of two of the defendant's sisters regarding statements made by the defendant. Defendant argues that the statements sought to be introduced were not hearsay but were an exception to the hearsay rule as statements offered to show the defendant's state of mind and that the rulings constitute reversible error because they hindered his effort to prove his insanity defense.
Helen Pettaway testified extensively as a defense witness for her brother. After detailed testimony regarding her brother's actions and statements she proceeded to relate the incident at the Shreveport Mental Health Clinic when the defendant had taken his file and what he had told her regarding its contents. The state objected asserting that this statement was inadmissible hearsay and the trial court sustained the objection. In our resolution of this issue, we note that it is immaterial whether or not this ruling of the trial court was correct because later in her testimony Helen Pettaway, without objection, testified as to what the defendant had told her regarding this incident and the file's contents. Any error in disallowing the statement at the earlier stages of her testimony was harmless and in fact cured by her later testimony. State v. Huizar, 414 So.2d 741 (La.1982).
Shirley White, defendant's other sister, also testified on his behalf relating events surrounding the defendant's attack on her mother. Thereafter, she stated that she did not understand what was wrong with him and began to relate what he had said to her regarding his condition. The state objected to any testimony concerning what the defendant may have said. After the objection was sustained, defense counsel admonished his witness not to testify about what someone had told her and continued his questioning without objection to the court's ruling. The failure to raise a contemporaneous objection to a ruling of the court constitutes a waiver of that objection. State v. Huizar, supra. State v. Molinario, 400 So.2d 596 (La.1981); La.C. Cr.P. Art. 841. Furthermore, when the defense acquiesces when the court sustains an objection to examination of a witness that objection is waived. State v. Huizar, supra; State v. Motton, 395 So.2d 1337 (La.1981); La.C.Cr.P. Art. 841. Here, not only did the defense fail to lodge a timely objection to the court's ruling but also admonished the witness to refrain from testifying as to what she had been told.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 21
In this assignment, the defendant contends that the trial court erred in sustaining an objection to testimony of Dr. Paul Ware and making an impermissible comment on the evidence in connection with the ruling.
This issue arose when Dr. Ware attempted to explain the magnitude of the disease suffered by defendant by referring to another case of paranoid schizophrenia. The state objected, and in response the court stated "I really don't think that's relevant Dr. Ware." The defense objected to the court's ruling solely on the basis that the evidence sought to be admitted was relevant.
*1365 Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La.R.S. 15:441. The determination of whether evidence is relevant is within the discretion of the trial judge and his ruling will not be disturbed absent a clear abuse of discretion. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Williams, 431 So.2d 885 (La.App. 2d Cir.1983). The trial court's ruling in this case does not constitute an abuse of discretion because the testimony sought to be admitted was not necessary to convey to the jury the degree of the defendant's illness in light of other evidence admitted on the same issue.
For the first time on appeal, the defendant argues that the response of the court was a comment on the evidence governed by La.C.Cr.P. Art. 772 which prohibits the judge from commenting upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved or refuted. The purpose of this article is to insure that the jury is in fact the judge of the law and of the facts on the question of guilt or innocence of the defendant after it has been charged as to the law applicable to the case by the presiding judge. State v. Hodgeson, 305 So.2d 421 (La.1974). The article is not applicable to the trial judge's reasons for ruling on objections relating to the admission or exclusion of evidence, provided the judge's remarks are not unfair or prejudicial to the defendant. State v. Knighton, 436 So.2d 1141 (La.1983). State v. Williams, 397 So.2d 1287 (La.1981). We construe the remarks of the trial judge in this case to be a permissible explanatory comment in assigning reasons for a court ruling. [Compare State v. Henry, 352 So.2d 643 (La. 1977) where the trial judge responded to a defense objection to relevance by stating that the testimony in question was "most relevant".]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 24
Through this assignment, defendant argues that it was error to deny him the opportunity to present surrebuttal evidence on the issue of his insanity after the state had presented evidence to rebut this defense.
The normal order of trial is set forth in La.C.Cr.P. Art. 765. La.R.S. 15:282 specifically provides that the state has the right to rebut evidence presented by the defendant. However, the defendant is not granted the same right but is relegated to the provision of La.C.Cr.P. Art. 765(5) which vests the trial court with the discretion to permit the introduction of additional evidence prior to argument as authority for surrebuttal.
After the defense rested, the state presented rebuttal evidence consisting of the videotape of the line up and the testimony of Dr. Mauroner that a very severe or very chronic paranoid schizophrenic would not know his left from his right. Defendant sought to introduce evidence to rebut the testimony of Dr. Mauroner and to address the issue of whether the defendant's ability to follow instructions during the line up proceeding necessarily meant that he was not psychotic at the time. The trial court responded that the jury had listened to expert testimony all day long and found that the requested surrebuttal was not called for.
This issue was addressed in State v. Moore, 344 So.2d 973 (La.1977) where a substantially similar argument was advanced on behalf of the defendant who had pled not guilty and not guilty by reason of insanity. The Moore court held that because the defendant did not outline what evidence he sought to produce, had not alleged that he had been prejudiced nor had any prejudice been demonstrated in the record, that the trial judge did not abuse his discretion in denying defendant's motion. The rationale of Moore is equally applicable here. Defendant has not alleged prejudice nor does the record support such a claim; he does not specify what evidence he sought to introduce. There is ample *1366 evidence contained within the testimony formerly presented on defendant's behalf to show that a person suffering from paranoid schizophrenia could act rationally at times and show no outward manifestations of the illness. Furthermore, an area of emphasis in the defendant's case was the theory that the defendant experienced immediate relief from his alleged psychotic episode during the shooting which caused him to act normally from that point. Accordingly, there was no abuse of discretion in denying defendant surrebuttal.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 25
In this assignment of error, defendant asserts his claim that the trial judge erred in denying his motion for a mistrial when the prosecutor allegedly made an improper and prejudicial statement during closing argument.
In closing argument, the district attorney began by informing the jury that what he was telling them was his interpretation of what the evidence had shown. He stated that his argument was not evidence. After detailing the applicable law as to the offense charged and the responsive verdicts, the prosecutor then began arguing his conclusions regarding what the evidence had proved. At this point, he stated "You wonder why they're pleading not guilty by reasons (sic) of insanity in this case. I contend, not any choice, we got them." Instantly, defense counsel objected, requested the jury be removed and moved for a mistrial. The district attorney countered that he was only arguing his conclusions of what the evidence had shown in the case. The trial judge denied the request for mistrial. Defense counsel objected to the ruling and the jury was returned. The district attorney resumed arguing stating:
As I was saying, Ladies and Gentlemen, you wonder why the defendant pleads not guilty by reasons (sic) of insanity, after hearing the evidence that we have. Is there any doubt based on this evidence, of proof beyond a reasonable doubt that he did the attempted first degree murder? * * * The witnesses after this, not only testified to further corroborating evidence of his guilt of the crime, but they also testified to some important things that show, we contend, that show that there was not question, based on this evidence, that the defendant was sane, knew right from wrong, at the time he committed this offense. * *
La.C.Cr.P. Art. 774 defines the scope of closing argument:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Viewing the prosecutor's argument as a whole, we conclude that the statement complained of can be fairly construed as his conclusions drawn from the evidence to the effect that the state's proof that defendant was Officer Watson's assailant was overwhelming and the evidence fell far short of establishing defendant's insanity defense. We are not convinced that the statement complained of was intended to appeal to prejudice or to inferentially cast aspersions on defense counsel. In fact, defense counsel was not even mentioned. Hence, we believe the statement was within the scope of proper closing argument. Compare State v. Webb, 419 So.2d 436 (La.1982). [See also State v. Sharp, 418 So.2d 1344 (La.1982), where the prosecutor's remarks regarding the insanity plea were held to have been improper but not reversible error.] Nor are we of the opinion that the statement was an effort by the prosecutor to demean legislative and judicial efforts to deal with the complex problem of criminal behavior by insane persons. Compare State v. Dupre, 408 So.2d 1229 (La.1982).
Moreover, before a verdict will be overturned on the basis of improper argument, this court must be thoroughly convinced *1367 that the jury was influenced by the remarks and that they contributed to the verdict. State v. Webb, supra; State v. Lindsey, 404 So.2d 466 (La.1981); State v. Carthan, 377 So.2d 308 (La.1979). Thus, even assuming the remarks constituted improper argument, we do not believe that they influenced the jury or contributed to the verdict.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 26
Through this assignment, the defendant argues that the trial judge erred in enforcing the rule of sequestration during closing argument against his family members who were witnesses contending that this action constituted an abuse of discretion.
La.C.Cr.P. Art. 764 provides:
Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
At the outset of the trial, the witnesses were placed under the rule of sequestration. Thereafter, at the beginning of oral argument, the state requested that all witnesses continue to be excluded from the courtroom and the court so ordered. At this point, the defendant did not object, and the state proceeded to argue its case. At the end of its argument, the state renewed its request stating that there were certain witnesses in the courtroom. The trial court asked that all witnesses leave the courtroom stating that he did not want the jury to be distracted or affected by defendant's family members during argument. At this point, defense counsel objected.
The thrust of defendant's argument is that while the trial judge had the authority to make this order, his making it in this case constituted an abuse of his discretion because it operated to exclude members of the defendant's family who were witnesses while allowing members of the victim's family who were not witnesses to remain in the courtroom. We note that the judge stated that members of the victim's family had not been identified to the jury as had members of defendant's family through their testimony.
The purpose of Article 764 is to prevent witnesses from being influenced by testimony of earlier witnesses, and to strengthen the rule of cross examination in developing facts. State v. Thompson, 429 So.2d 862 (La.1983). Accordingly, under this general purpose, if the trial court had chosen to release the witnesses from the rule of sequestration prior to argument, this may not have constituted an abuse of discretion, limited the primary purpose of the rule nor destroyed its effectiveness. State v. Thompson, supra. Compare State v. Sonnier, 402 So.2d 650 (La.1981).
However, although the general purpose of the rule is admittedly fulfilled when a witness or witnesses are sequestered during the presenting of evidence, the article does not limit the portions of the proceeding during which the trial court may exclude witnesses and does specifically provide that it shall do so upon request of the state or the defendant. Furthermore, the jurisprudence clearly states that the mandatory direction of this article is not governed by any particular time sequence and that the court is required to act with respect to a sequestration motion whenever in the course of the trial the motion is made. State v. Johnson, 438 So.2d 1091 (La.1983) and cases cited therein. Certainly, argument is a portion of the proceeding and the state specifically requested that all witnesses be removed during argument. It is noteworthy that no objection was made to the court's ruling until after the state had presented its initial argument. It is further noteworthy that the ruling of the court applied to all witnesses, state and defense alike. It is apparent from the trial judge's comments in connection with his ruling that he felt that the presence of any witnesses within the *1368 courtroom during argument would distract the jury, a conclusion that does not appear to be without basis. A trial judge has the authority to require that criminal proceedings be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done. La.C.Cr.P. Art. 17. Finally, the defendant has not demonstrated any prejudice resulting to him from the trial court's ruling. Construing all of these factors together, we are unable to conclude that the trial judge abused his discretion in continuing the sequestration order through the argument.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 27, 28, AND 29
These assignments of error address the complaint that the trial judge erred by refusing to give three special charges submitted by defense counsel.
A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. Art. 807; State v. Smith, 414 So.2d 1237 (La.1982). Failure to give a requested charge constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. State v. Marse, 365 So.2d 1319 (La.1978); La.C.Cr.P. Art. 921.
Defendant's special requested charge No. 1 reads as follows:
If you find as a fact that Robert Pettaway would not have committed these acts or would not have engaged in this criminal conduct, but for this (sic) mental disease or defect which prevented him from recognizing at the time that he was committing these acts that they were wrong and should not be committed, then you should find him not guilty by reason of insanity. [State v. Berry, 324 So.2d 822 (La.1975).]
Our examination of the court's charge reveals that the trial judge charged the jury relative to the defense of insanity. The trial judge informed the jury that the defendant had the burden of proving his insanity at the time of the offense by establishing that it is more probable than not that he was insane at the time of the commission of the crime; and that insanity at the time of the commission of the crime exempts the offender from criminal responsibility. The trial judge further instructed that if the circumstances indicate that because of a mental illness or mental defect the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity.
The defendant's reliance on State v. Milby, 345 So.2d 18 (La.1977) is misplaced. In Milby, the Supreme Court held that where insanity of a temporary nature is relied upon as the defense, the preferable practice would be to grant special written charges as to temporary insanity when requested by the accused, if they are wholly correct. However, the court in Milby further stated that the general charge therein was correct and that the lack of detail of the wholly correct general charge relative to temporary insanity did not constitute reversible error. In the instant case, the defense was not "temporary insanity", and that issue was not argued by defense counsel to the jury. The general charge was correct in that it emphasized that insanity at the time of the commission of the crime exempted the offender from criminal responsibility; therefore, it encompassed the instruction contained within the defendant's special requested charge. Moreover, we cannot say that the failure to give the requested charge resulted in a miscarriage of justice, prejudiced the substantial rights of the accused or resulted in a substantial violation of a constitutional statutory right. This assignment is without merit.
Defendant's special requested charge No. 2 deals with the weight to be accorded *1369 police officers' testimony and reads as follows:
You are instructed that it is your duty to assess the weight and credibility of the evidence. You are not permitted to afford greater weight to the testimony of a law enforcement officer than that of any other witness merely because of his status as a law enforcement officer. [La.C.Cr.P. Art. 802(3); State v. Jones, 282 So.2d 422 (La.1973); State v. Nolan, 341 So.2d 885 (La.1977); State v. Allen, 380 So.2d 28 (La.1980).
We have examined the trial court's general charge and find that it adequately states the correct law dealing with the credibility of witnesses, incorporating within it the defendant's special requested charge. Further, prospective jurors were questioned during voir dire examination about whether they would accord a police officer's testimony more weight than another witness by virtue of his occupation. Additionally, the defendant has not alleged any substantial prejudice to his rights resulting from the trial judge's refusal to give the requested charge. This assignment of error lacks merit.
The third special requested charge defines specific and general intent:
Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. On the other hand, general intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act irrespective of any subjective desire on this (sic) part to have accomplished such result. [State v. Elzie, 343 So.2d 712 (La.1977).]
In the court's charge to the jury, the trial judge defined specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired and actually intended to accomplish the criminal consequences constituting the crime charged." The trial judge defined general intent as existing whenever specific intent is questioned, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the proscribed criminal consequences as reasonably certain to result from his act or his failure to act. These definitions are taken verbatim from La.R.S. 14:10 defining criminal intent. They constitute an accurate and complete statement of the law and incorporate the special requested charge. The trial judge did not err by refusing to give special requested charge No. 3. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 33
Through this assignment, the defendant claims that the trial court erred in sustaining the state's objection to the defendant's attempt to establish bias on the part of a prosecution trial witness at the hearing on the motion for new trial.
Initially, we note that while the defendant assigned as error the failure of the trial court to grant the motion for new trial, he has neither briefed nor argued that assignment on appeal. Accordingly, we have formerly considered that assignment to be abandoned. State v. Domingue, supra; State v. Williams, supra. Notwithstanding that, defendant argues that a ruling made in connection with that hearing is erroneous. With the record in this particular posture, we are somewhat at a loss to conceive of what relief we could offer the defendant were we to in fact determine that the ruling was erroneous since he no longer complains that the trial court erred in denying his motion for new trial and does not contend that the ruling denying the new trial constitutes reversible error. Accordingly, even if this evidentiary ruling contained in this assignment of error was in fact erroneous, we consider the objection to this ruling which was made in connection with the motion for new trial to also have been abandoned.
Parenthetically, however, we also note that if reviewable, this assignment is without merit. Included in the grounds for relief sought through the motion for new trial was an allegation that Dr. Norman Mauroner, the only psychiatrist called by the state to rebut the insanity defense had *1370 an interest in the outcome of the trial at the time of his testimony because a civil suit had been filed against him by the victim and the victim's family on March 1, 1983, approximately three months after the trial.
At the hearing on the motion for new trial, Dr. Mauroner was questioned regarding his knowledge of this suit. He testified that he had not received any demand letters or demands at all relative to the suit. He further testified that he had no idea that he was going to be sued at the time of trial. Immediately thereafter, defense counsel sought to question this witness about his knowledge of similar suits filed against doctors by victims of their released patients. The state objected and the trial court sustained the objection upon a finding that Dr. Mauroner had denied knowledge of the suit itself prior to and at trial which caused the trial court to find that this line of questioning was irrelevant.
In essence, defense counsel contends that he should have been allowed to pursue this line of questioning to show bias, interest or corruption as provided for by La.R.S. 15:492.
Certainly, had evidence been adduced at trial that a damage suit had been filed against this witness in connection with this defendant's criminal acts this would have tended to show bias and interest and would have been admissible for the jury's consideration. [Compare State v. Kellogg, 350 So.2d 656 (La.1977) where the victim and his wife had filed suit against the defendant arising out of the incident which formed the basis of the charge for which the defendant was tried.] We extend this rationale to conclude that had it been adduced at the motion for new trial that this witness was aware of a possible suit at the time of trial, which fact was not available to defendant or should not have been available to him prior to or during trial, then that may well have formed the basis for granting a new trial. However, the witness testified without contradiction that he had no knowledge of a suit or the possibility of a suit at the time he testified.
Thereafter, defendant attempted to question this witness about the possibility of civil liability arising out of a wrong diagnosis of a dangerously mentally ill person or an improvident release of such a patient. While we concede that under the facts of this case this would have been a relevant line of inquiry at trial to show possible bias or interest on the part of this witness, under no stretch of the imagination can this line of inquiry be held to involve "newly discovered evidence". This was an area of possible bias which defense counsel, through his legal training and expertise plus his awareness of the facts and circumstances of this defendant's history and connection with Dr. Mauroner and the mental health clinic, should have been aware of at trial. It has consistently been held that a motion for new trial is properly rejected when the new evidence is of a nature that it should have been discovered before or during trial. State v. Brown, 338 So.2d 686 (La.1976); State v. Bryan, 427 So.2d 1169 (La.1983). Accordingly, the trial court did not err in excluding this testimony because it was a line of relevant inquiry which could have been pursued at trial.

ASSIGNMENT OF ERROR NO. 34
Finally, through this assignment defendant argues that the trial court erred in imposing an excessive sentence. At the sentencing hearing, the defendant was sentenced to fifty years at hard labor. Defendant does not contend that the trial judge did not adequately comply with La.C. Cr.P. Art. 894.1 in sentencing this defendant but does contend that he did not give adequate consideration to the defendant's mental condition as a mitigating factor.
Article I, § 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment. Although a sentence is within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). In imposing sentence a trial judge must comply *1371 with the mandatory requirements of La.C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Jones, 381 So.2d 416 (La.1980). The sentencing guidelines of Article 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983); State v. Sepulvado, supra. While a sentence may be vacated and a case remanded for re-sentencing when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record, a sentence should not be set aside as excessive in the absence of an abuse of the wide discretion accorded a trial judge in the imposition of sentences within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
There is no need for a remand in this case. The record reflects that the trial judge had the benefit of a pre-sentence investigation report and defense counsel was allowed to rebut unfavorable information contained therein.
Contained within the articulation of the trial judge's sentencing reasons, is the fact that the defendant's past history of criminal behavior is basically inconsequential, consisting of only two misdemeanor convictions. It was determined that there was an undue risk that during a period of any suspended sentence or probation that the defendant would commit another crime thereby necessitating correctional treatment with a lesser sentence than the one imposed found to deprecate the seriousness of the offense. The judge further concluded that the defendant's conduct had caused serious harm and threatened even more serious harm because the officer was shot with several aimed bullets. He further found no provocation on the part of the officer. It was specifically found that the defendant's history of mental problems did not sufficiently mitigate his conduct or tend to excuse or justify what he did. It was finally concluded that this conduct was the result of circumstances likely to recur, the defendant would not respond affirmatively to probationary treatment and there was no indication that imprisonment would result in undue hardship to the defendant or his dependents. The trial judge finally stated that he could not think of a more appropriate case for a maximum sentence than this case in which an unarmed police officer was shot three times while trying to hide his head in an effort to keep from being killed. The record reveals that the trial judge substantially complied with La. C.Cr.P. Art. 894.1.
Accordingly, the extent of our review is to determine whether the maximum sentence imposed constituted an abuse of the trial judge's wide discretion. We are mindful of the principle that ordinarily maximum sentences are appropriately imposed in cases involving the most serious violations of the described offenses and for the worst kind of offender; nothing else will justify the great sentencing discretion given the trial judge. State v. Jones, 398 So.2d 1049 (La.1981). It is apparent from the trial court's reasons that he found the defendant to be the worst kind of offender in an attempted first degree murder case. This conclusion is supported by the record which reveals that a police officer was disarmed, shot repeatedly without provocation and permanently disabled.
A sentence is constitutionally excessive in violation of Article I, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983). Our review of the record leads us to conclude that this sentence is commensurate with, rather than grossly disproportionate to, the severity of defendant's offense. The extended imprisonment is not needless and purposeless but is imposed to negate the defendant's opportunity to commit such crimes in the future. The sentence is adequately particularized to this particular defendant in light of his particular crime. But for defendant's poor aim and prompt medical attention, the crime could well have been first degree murder rather than *1372 a mere attempt. Defendant's argument that his history of mental problems should justify a less onerous sentence does not compel a different result nor justify a finding that the trial judge abused his great discretion. [Compare State v. Hart, 397 So.2d 518 (La.1981), where a fifty year sentence was imposed on a defendant convicted of attempted first degree murder after a diagnosis of schizophrenia by the sanity commission and an extended hospitalization before trial.]
This assignment of error is without merit.
For the foregoing reasons the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.