345 So.2d 18 (1977)
STATE of Louisiana, Appellee,
v.
Billy Ray MILBY, Appellant.
No. 58688.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*19 Thomas W. Davenport, Jr., Davenport, Files, Kelly & Marsh, Monroe, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., John R. Harrison, Asst. Dist. Atty., for plaintiff-appellee.
*20 TATE, Justice.
The defendant Milby was convicted of second-degree murder, La.R.S. 14:30.1 (1975), and sentenced to life imprisonment. He appeals, urging seven assignments of error.
The defendant Milby shot the victim Demoss in a barroom and then beat his wife, Mrs. Milby (who was with Demoss), with a shotgun. The victim and the defendant's wife had in the past lived together.
At the trial, the chief defenses relied upon were: (a) Because of a mental defect at the time of the shooting, Milby was incapable of distinguishing between right and wrong, i. e., was legally insane, La.R.S. 14:14; (b) His gross intoxication at the moment of the offense precluded the specific criminal intent required for conviction of the crime charged, La.R.S. 14:15(2).

I.

Refusal to give special jury instructions
The most serious issue presented by this appeal concerns the failure of the trial judge to give special instructions requested by the defendant which relate to the defense of insanity. (Assignment of Error No. 7, special written charge number 5.)
The defense of insanity is based upon psychiatric testimony. The defendant construed it as being to the effect that the accused Milby is subject to a characterological disturbance. When this underlying mental defect is aggravated by overindulgence in alcohol, allegedly the accused may sustain an acute brain syndrome, by which he has no conscious awareness of the difference between right and wrong.
Substantial lay evidence was also introduced tending to corroborate this behavior pattern.
The chief defense of the case was that, except when the syndrome occurs, the accused appears to be and is a completely normal and sane individual, in control of his characterological disorder; but that, when due to alcohol (or other aggravating factor) he is unable to control his mental defect, the accused sustains a complete disruption of his mental processes, has no conscious awareness of what he is doing, and is unable to distinguish between right and wrong.
The essence of the defense is that, at the time of the offense, the accused was legally insane by reason of his mental defect; even though, at the time of the trial and during most of his waking life, he was and is legally sane. To emphasize this defense, the defendant requested a special charge so that the jury could distinguish between a periodical and temporary legal insanity as contrasted with the layman's notion of permanent "insanity".[1]
*21 The portion of the general charge relating to the insanity defense includes three out of the charge's total eleven pages. These general instructions were correct insofar as they went. The pertinent portion of the general charge does indicate that the insanity must relate to the time of the offense, not before or after,[2] which implicitly recognizes the defense of temporary insanity relied upon by the accused.
Nevertheless, where (as here) insanity of a temporary nature is relied upon as the principal defense, it seems to us that the preferable practice would be to grant special written charges as to temporary insanity when requested by the accused, if they are wholly correct, La.C.Cr.P. art. 807 at least, if (as here) the general charge only implicitly instructs the jury as to the issue.
The question is whether the trial court's failure to give this special charge as requested is reversible error. The court's general charge explicitly instructed the jury that the insanity must be proven to relate "to the time of the offense not before or after," but it did not elaborate the defense of temporary insanity as requested by the accused.
A close issue is presented. Ultimately, we conclude that the lack of detail of the wholly correct general charge does not require reversal:
We are not persuaded that the additional requested special legal instructions in technical legal language would have so materially added to the jury's understanding of the basic issue before it, that the denial of it prejudiced the substantial rights of the accused or constituted a substantial violation of any statutory right to have the special charge given. See La.C.Cr.P. art. 921. Further, examining the final arguments of counsel,[3] we find that the issue of temporary insanity was fully and fairly argued as presented to the jury by the evidence.
We therefore do not find reversible merit to this assignment.
We likewise find no error in the trial court's refusal to give other special jury charges requested:
Special Charge Number 1: The defendant requested the trial court to instruct the jury as to the mandatory penalty for second-degree murder, i. e., life imprisonment without benefit of parole, probation, or suspension of sentence for a period of forty years, La.R.S. 14:30.1 (1975).
In State v. Blackwell, 298 So.2d 798 (La. 1974), we held that jury instruction or argument on penalties may be allowed or not, within the discretion of the trial court, because imposition of sentencing is within the province of the judge and is not a jury function. In State v. Prater, 337 So.2d 1107 (La.1976), a majority of this court agreed that the Blackwell rationale is inapplicable where, upon conviction, the trial judge must impose a mandatory sentence; and that, therefore, the trial court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than by the judge.
However, as the concurring opinion in Prater noted, this modification of the Blackwell rule only applies to cases tried *22 after the date of finality of Prater, September 27, 1976. Since the present case was tried in June of that year, prior to such effective date, the trial court did not here abuse its discretion by refusing to charge the jury as to sentence, under the interpretation of Blackwell prevailing at the time of this trial.
Special charges 2, 3, 4, and 6 contained matters sufficiently within the general charge of the trial court as to justify the trial court's refusal to give them. La.C. Cr.P. art. 807.

II.

Other assignments of error
The other assignments do not present reversible error:
Assignment 1: The trial court was in error in sustaining a hearsay objection by the state as to whether a state witness had received information as to the accused's condition immediately before the shooting: The question did not attempt to elicit the (hearsay) information the officer had received from two specified witnesses, merely the fact whether he had received information.
Nevertheless, the testimony of the two witnesses was introduced into evidence and fully discloses the information as to the accused's intoxicated condition reported to the officer. The refusal to allow the question caused no prejudice to the defendant under the circumstances.
Assignment 2: The probative value of the black and white photographs admitted for relevant purposes outweighed any possible inflammatory effect. State v. Smith, 327 So.2d 355 (La.1976).
Assignment 3: Over hearsay objection by the defendant, a state witness was permitted to testify that she had heard that the victim had taken another person with the accused's wife to a night club on a date prior to the incident. The hearsay objection was erroneously overruled, because the response was introduced for the truth of the out-of-court information given by the witness rather than for any admissible purpose. State v. Thompson, 331 So.2d 848 (La.1976).
Nevertheless, no prejudice resulted under the circumstances of this case, because in fact there was eyewitness evidence introduced at the trial that the accused's wife and another person had arrived at the night club with the victim on the occasion in question.
Assignment 4: We cannot say that the trial court abused its discretion in limiting re-cross-examination, following the state's re-direct examination. The latter was properly confined to the subject matter of the cross-examination. La.R.S. 15:281. Under such circumstances, the trial court has discretion to curtail re-cross-examination as to aspects of the case not covered by the re-direct examination. See State v. Corbin, 285 So.2d 234, 237 (La.1973).
Assignment 6: The trial court did not commit reversible error by refusing a continuance sought on the morning of the trial. The continuance was sought because of the inability of a bedridden witness (just released from the hospital) to respond to a subpoena issued by the defendant.
The showing made justifies the finding that the witness was "too ill to testify", so that her preliminary examination testimony (sworn and cross-examined) was therefore admissible at the trial instead of her live testimony, due to the unavailability of the witness. La.C.Cr.P. art. 295; State v. Ford, 336 So.2d 817 (La.1976). (The defense introduced the preliminary examination testimony of the unavailable witness.)
Under the circumstances, we find no abuse of the trial court's discretion in denying the continuance, especially since the testimony of the witness at the hearing on the motion for a new trial shows that it was essentially the same as the testimony given by her at the preliminary examination.
Assignment 8: We find no abuse of the trial court's discretion when, during hearing on the motion for a new trial, it sustained objection to defense questions as *23 concerning matters not shown to be relevant to the decision of the issues raised by the motion for a new trial.
Assignment 9: At the time of sentencing, the defendant objected to the life sentence imposed upon him. He contends that it is excessive and therefore in violation of Article 1, Section 20, Constitution of 1974.
Assuming that excessiveness is (as some members of the court have indicated) a ground for appellate review, see State v. Williams, 340 So.2d 1382 (La.1976), we cannot say that a life sentence for (what the jury found to be) the intentional murder of another human being is excessive, when the jury rejected factual defenses of intoxication and insanity.

Decree
For the foregoing reasons, we affirm the conviction and sentence.
AFFIRMED.
MARCUS, J., concurs.
SANDERS, C. J., and SUMMERS, J., concur in the decree.
DIXON, J., dissents and is of the opinion that a rehearing should be granted.
NOTES
[1] The pertinent portion of special charge number 5 is represented by the first sentence of the second paragraph below (the substance of the first paragraph was already included in the general charge):

"In order to find the defendant not guilty by reason of insanity the defendant must have been insane at the time the unlawful act was committed. It is not sufficient that he was insane before or after, or both before and after, the unlawful act; but he must have been insane at the particular moment of the crime. If, however, insanity of a permanent type or continuing nature, or characterized by a habitual and confirmed disorder of the mind, not temporary or occasional, is shown to have existed prior to the commission of the act, it would be presumed to continue up to the commission of the act, unless the presumption be overcome by competent evidence.
"But where the insanity is periodical, temporary and not permanent, where there are lucid and sane intervals and when it is shown that the lucid intervals generally follow the attacks of insanity, then the presumption of continuance does not exist. The condition of mind which relieves an accused of criminal responsibility and which we term insanity is that at the time of the commission of the act he was laboring under such a defect of reasoning from disease of the mind or a defect of the mind as not to know the nature and quality of the act he was doing was wrong. In other words, that he was incapable of having the specific criminal intent which is an indispensable element in the crime with which he is charged." (Italics ours.)
We pretermit whether the charge need not be given since not wholly correct. La.C.Cr.P. art. 807. The state points out that the last sentence may not be wholly correct, since specific criminal intent, La.R.S. 14:10(1), may exist even if, because of mental defect, the offender is incapable of distinguishing between right and wrong and is therefore exempt from criminal responsibility because of legal insanity, La.R.S. 14:14. (We note that the proposed charge, if the last sentence be regarded as not wholly correct, is less favorable to the defendant than if the sentence were omitted.)
[2] The pertinent paragraphs are as follows:

"However, with respect to the plea of not guilty by reason of insanity, different rules apply. First, the legislature has stated the basic law as follows:
`If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.'
"Now, the law begins with the presumption that everybody is sane; so that the state does not have to prove defendant was sane. Rather, defendant bears the burden of providing this issue by a preponderance of evidence; and this matter relates to the time of the offense, not before or after." (Italics ours.)
[3] See supplemental volume of transcript, filed March 21, 1977.