FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**BY GUIDRY, J.**:

2016-KK-1412          STATE OF LOUISIANA v. COREI K. GUIDRY (Parish of Orleans)

Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J. for oral argument.  He now sits as an elected Justice at the time this opinion is rendered.

Accordingly, the district court's ruling is reversed, the stay issued by this court is hereby lifted, and the matter is remanded to the district court for further proceedings.
REVERSED; STAY LIFTED; REMANDED.

JOHNSON, C.J., dissents and assigns reasons.
WEIMER, J., dissents and assigns reasons.
GUIDRY, J., additionally concurs and assigns reasons.
CRICHTON, J., additionally concurs and assigns reasons.
GENOVESE,J., additionally concurs for the reasons assigned by Justice Guidry and Justice Crichton.

SUPREME COURT OF LOUISIANA

No. 2016-KK-1412

STATE OF LOUISIANA

VERSUS

COREI K. GUIDRY

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

**GUIDRY, Justice***

The issue presented in this case is whether the trial court may allow a criminal jury to be informed of the possible mandatory minimum sentence faced by the defendant if, after a conviction on the offense being tried, he were to be sentenced under the Habitual Offender Law. For the reasons set forth below, we find the district court erred in denying the State's motion *in limine*, which sought to disallow the defendant from mentioning in argument the mandatory minimum sentence the defendant could be subject to under the Habitual Offender Law should the State seek to enhance his sentence under that law and should the court find the State has proved all of the elements to warrant enhancement of the sentence. We find the issue of the possible mandatory minimum sentences that may be imposed if the defendant is convicted and the State successfully pursues enhancement of the sentence under the Habitual Offender law is too attenuated from the guilt phase of trial to be discussed before a jury, because it shifts the focus of the jury from its duty to determine guilt or innocence to issues regarding sentencing, possibly causing confusion of the issues and inviting the jury to speculate as to why a

---

* Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

defendant may be facing such a term of imprisonment. Accordingly, we reverse the district court's ruling.

FACTS AND PROCEDURAL HISTORY

The defendant, Corei K. Guidry, was charged by a bill of information with one count of possession with intent to distribute heroin, a violation of La. R.S. 40:966(A)(1); one count of possession with intent to distribute cocaine, a violation of La. R.S. 40:967(B)(1); one count of possession with intent to distribute Tramadol, a violation of La. R.S. 40:969(B)(2); and one count of conspiracy to commit simple escape, a violation of La. R.S. 14:(26)110(A). The charge of possession with intent to distribute heroin carries the highest sentence: ten to fifty years at hard labor, La. R.S. 40:966(B)(1). Prior to the start of the trial, the State filed a motion *in limine* to exclude mention of an sentence. In its motion, the State sought to prohibit the trial court and the defendant from informing the jury that, if convicted, the defendant could face a possible sentence of life imprisonment as a fourth offender under the Habitual Offender Law, La. R.S. 15:529.1 *et seq*. The trial court denied the motion, and the court of appeal denied the State's writ application. The State then sought a stay and writs in this court, which issued a stay and invited a *per curiam* from the trial court. After supplemental briefing from both parties, this court granted the State's writ application to review the district court's ruling. *State v. Guidry*, 16-1412 (La. 9/16/16), ___ So.3d ___, 2016 WL 5462459.

ANALYSIS

The State and the defendant agree the applicable decision of this court with regard to the inclusion of sentencing ranges in arguments to the jury and jury instructions provides as follows:

> When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. *State v. Hooks*, 421 So.2d 880 (La. 1982); *State v. Washington*, 367 So.2d 4 (La. 1978). In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense's penalty is within the discretion of the trial judge. *State v. Williams*, 420 So.2d 1116 (La. 1982); *State v. Dawson*, 392 So.2d 445 (La. 1980); *State v. Carthan*, 377 So.2d 308 (La.1979); *State v. Blackwell*, 298 So.2d 798 (La. 1974) (on rehearing)….

*State v. Jackson*, 450 So.2d 621, 633-34 (La. 1984).

Although the State originally argued below that the trial court abused its discretion in allowing the jury to be informed of the sentence the defendant could face if his sentence was successfully enhanced under the Habitual Offender Law, the State now argues the court should remove from the trial court's discretion the decision to permit criminal juries to be made aware of possible sentences under the Habitual Offender Law.[1] The defendant counters the law should remain as settled for some forty years, that an enhanced sentence under the Habitual Offender Law qualifies as an "instance[] other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict," and that the trial court under the facts of this case did not abuse its discretion in permitting the jury to be informed of the possible mandatory minimum sentence as a fourth felony offender. For the reasons set forth below, we hold the trial court erred in applying *Jackson* to allow the jury to be informed of the possible enhancement of the defendant's sentence under the Habitual Offender Law if the defendant were convicted and if the State should successfully seek to enhance his sentence under the Habitual Offender Law.

---

[1] The State allows that an exception could be fashioned when the defendant testifies and is confronted before the jury with his prior convictions for impeachment purposes. We need not address that suggestion, as we are not here confronted with that factual scenario.

In prefacing our reasons, a brief outline of the applicable law and the jurisprudence is in order. We commence with the statutes governing the scope of the argument and the duties of the trial court in charging the jury.

Louisiana Code of Criminal Procedure article 774 states, in pertinent part that "[t]he argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." The court shall charge the jury:

(1) As to the law applicable to the case;

(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and

(3) That the jury alone shall determine the weight and credibility of the evidence.

La. C.Cr.P. art. 802.

With regard to sentencing La. C.Cr.P. art. 871 states in part that "[a] sentence is the penalty imposed by the court on a defendant." The "law applicable to the case" is, therefore, the critical inquiry in determining whether a jury may be informed of potential sentencing, as discussed more fully below.

Prior to 1974, this court's jurisprudence clearly disfavored parties and trial courts informing a criminal jury of potential sentences, whether the sentence was mandatory or not, unless the offense charged was capital in nature. In *State v. Harris*, 258 La. 720, 247 So.2d 847 (1971), this court examined the meaning of "the law applicable to the case" to determine whether sentencing fell within the scope of La. C.Cr.P. arts. 774 and 802. There, the defendant sought to argue to the jury the severity of the penalty for armed robbery, pointing out the crime carried a maximum sentence of ninety-nine years imprisonment, without benefit of

4

probation, parole, or suspension of sentence. He also sought to inform the jury of the minimum mandatory sentence. Ultimately, the trial judge ruled defense counsel could not argue the sentencing law to the jury. In affirming the ruling, the *Harris* court explained:

> The determination of the appropriate penalty and the imposition of sentence in non-capital cases are functions of the judge. The jury is concerned only with guilt.
>
> Under Article 802 of the Louisiana Code of Criminal Procedure, the judge is required to charge the jury as to the law applicable to the case. Under Article 774, argument to the jury is restricted to the evidence admitted, to the lack of evidence, to conclusions of fact, and to the law applicable to the case.
>
> We have held that sentence regulations in non-capital cases, such as those relating to mandatory terms, probation, or parole, are inappropriate subjects for the judge's charge to the jury. These matters are foreign to the jury's function of guilt determination and, consequently, form no part of "the law applicable to the case." *See State v. Andrus*, 250 La. 765, 199 So.2d 867 [(1967)]; *State v. Green*, 244 La. 80, 150 So.2d 571 [(1963)].
>
> In *State v. Green*, *supra*, we said:
>
>> In this requested special charge defendant sought to have the jury charged what sentence could be imposed under the law in the event of conviction for violation of the Uniform Narcotic Drug Act, under which defendant was being tried, and also charged that a person so convicted was without the benefit of parole, probation, or suspension of sentence.
>>
>> Under the law of this state the judge is required to charge the jury all the law applicable to the accused's guilt or innocence of the crime charged, or any lesser crime included therein, in the light of the evidence adduced. It is the duty of the jury in such cases to determine the guilt or innocence of the accused, but in the event of conviction it is the duty of the judge, and not the jury, to impose sentence. The fixing of the punishment for conviction is solely within the province of the judge, and is no concern of the jury except in capital cases where the jury may return a verdict of 'guilty without capital punishment' and preclude the judge from imposing the death sentence. Therefore this requested special charge was not pertinent, and was correctly refused.
>
> By the same token, sentence regulations form no part of the applicable law to be argued by counsel before the jury. To allow

5

argument of these matters would inject irrelevant considerations into the jury's deliberations as to guilt.

The prevailing rule is that when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for argument to the jury. *Abney v. State*, 123 Miss. 546, 86 So. 341; 53 Am.Jur., Trial, § 467, p. 373. The supporting decisions from other jurisdictions are collated in the Annotation, Argument to Jury--Law or Lawbooks, 67 A.L.R.2d 245, 294. These decisions are based upon the sound principle that legal matters irrevelant [sic] to guilt should not be pressed upon the jury.

*Harris*, 258 La. at 729-31, 247 So. 2d 850-51.[2]

In 1974, the court again endorsed the principle that juries were not concerned with issues outside of the guilt or innocence of the defendant, albeit with the exception of capital cases, and affirmed a trial court's refusal to instruct the jury on the penalty range for the charge of armed robbery. *State v. Blackwell*, 298 So.2d 798 (La. 1974). On rehearing, the *Blackwell* court followed *Harris* to hold that "[i]n those jurisdictions where the jury determines only guilt or innocence and the court imposes the penalty, it is not error for the court to refuse to instruct the jury on possible penalties. The general view is that penalty is simply of no concern to the jury." 298 So.2d at 804 (on rehearing). The *Blackwell* court went on to note, however, that "[o]ur law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge." *Id.* at 804 and 804 n.3x (noting that it is not reversible error to instruct the jury on the penalty and that many judges in Louisiana regularly do so). The *Blackwell* court further distinguished non-capital cases from capital cases, wherein there is a mandatory

---

[2] *Harris* was not a unanimous decision. The concurring justice, 258 La. at 732, 247 So.2d at 851, Tate, J., concurring, sided with the dissenters who reasoned the jury should be informed of the applicable sentencing law: 258 La. at 732-33, 247 So.2d at 851, Dixon, J., dissenting (the jury protects against tyranny of the law and the penalty alone may render a law oppressive), and 258 La. at 734-37, 247 So.2d at 852-53, Barham, J., dissenting (there is no constitutional or statutory prohibition against arguing to the jury or even charging the jury as to the penalty that makes the law criminal, and because juries do in fact consider penalties in arriving at verdict, it would appear to be good law that the jury be correctly informed of the penalty).

minimum sentence of life imprisonment "sufficient to justify informing the capital case jury of the effect of its verdict." *Blackwell*, 298 So.2d at 804 (on rehearing).

In *State v. Prater*, 337 So.2d 1107 (La. 1976), the defendant contended the trial judge had erred in refusing to charge the jury that, in the event defendant was found guilty of distribution of heroin, a mandatory life sentence would be imposed. The defendant argued justice requires the jury be informed of this mandatory penalty so that jurors will give more careful consideration to their verdict. The *Prater* court in a plurality decision found no abuse of the trial court's discretion, citing *Harris* and *Blackwell*. However, one justice concurred only in the result, noting that four justices, a majority, had expressed their view that jurors should be fully informed of the consequences of their verdicts, including the penalties involved, *see* 337 So.2d at 1109-10, Tate, J., concurring, at least where there is no sentencing discretion following a conviction, *see* 337 So.2d at 1110-11, Calogero, J., dissenting. The concurring justice signaled the erosion of *Blackwell*, and by association the principle espoused in *Harris*, noting that "in any case tried after the finality of the present decision I shall regard the bench and bar as on notice that, in the view of a majority of this court, a charge and argument may be required and permitted, despite *Blackwell*, when the statutory offense requires a mandatory legislative penalty, with no judicial discretion as to its imposition following verdict. Thus, to this extent at least, *Blackwell* may be regarded as overruled prospectively by the present opinion." 337 So.2d at 1110, Tate, J., concurring.

The court in *State v. Milby*, 345 So.2d 18 (La. 1977), introduced the first iteration of what has become more familiarly known as the *Jackson* rule, set forth above at the outset of this analysis. As the State points out, subsequent cases more explicitly adopted the view that trial courts must allow juries to be informed of the

7

sentence where the sentence following a conviction is mandatory. Additionally, however, subsequent cases interpreted language from *Blackwell*, language the State describes as *dictum*, that the trial court has the discretion under the law to allow, or not to allow, jury instruction or argument on penalties that are otherwise not mandatory. The *Milby* court set forth the state of the law, explaining as follows:

> In *State v. Blackwell*, 298 So.2d 798 (La. 1974), we held that jury instruction or argument on penalties may be allowed or not, within the discretion of the trial court, because imposition of sentencing is within the province of the judge and is not a jury function. In *State v. Prater*, 337 So.2d 1107 (La. 1976), a majority of this court agreed that the *Blackwell* rationale is inapplicable where, upon conviction, the trial judge must impose a mandatory sentence; and that, therefore, the trial court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than by the judge.

*State v. Milby*, 345 So.2d at 21. This modification of *Blackwell* applied prospectively after *Prater*. *Milby*, 345 So.2d at 21.

Although the *Jackson* rule has been settled law, we agree the time has come to address the *Jackson* rule in the context of whether to permit disclosure to the jury of mandatory minimum sentences that could possibly be imposed under the Habitual Offender Law. To that end, we turn to the Habitual Offender Law itself and the jurisprudence applying *Jackson* in that particular context.

The procedure under the Habitual Offender Law, La. R.S. 15:529.1, allows for a sentence to be enhanced based on the degree of a defendant's recidivism. As the State points out, unless and until a bill of information separate from the underlying charging document is filed by the district attorney after a defendant's felony conviction, there can be no finding of habitual offender status to justify an enhanced penalty under the law. *See* La. R.S. 15:529.1(D)(1)(a). A defendant may be deemed a multiple offender only after the following sequence of events occurs: the filing of a multiple offender bill of information; an appearance before the court;

8

a contradictory hearing, if necessary; the presentation of evidence on which the district attorney bears the burden of proof beyond a reasonable doubt on any issue of fact; and either a finding by the court that the defendant has been convicted of a prior felony or felonies or the defendant's acknowledgment or confession in open court, after being duly cautioned as to his rights, that he has been so convicted. La. R.S. 15:529.1(D)(l)(a) and (b), (D)(2), and (D)(3). It is only "when the judge finds" the defendant has been convicted of a prior felony or felonies, or the defendant acknowledges such status, that the court "shall sentence him to the punishment prescribed in this Section." La. R.S. 15:529.1(D)(3).

Several cases from the court of appeal have held the trial court did not abuse its discretion in disallowing the jury to be informed of the potential sentence under the Habitual Offender Law. In *State v. Dominick*, 94-1368, pp. 4-5 (La. App. 4 Cir. 4/26/95), 658 So.2d 1, 3, *writ denied*, 95-2291 (La. 2/2/96), 666 So.2d 1091, the Fourth Circuit applied *Jackson* to a case in which there was a possibility that a multiple bill would be filed upon conviction to enhance the defendant's sentence. There, the defendant had initially pleaded guilty with the understanding that he would not be multiple billed, but the State, notwithstanding that agreement, filed a multiple bill. Consequently, the defendant was allowed to withdraw his guilty plea. The trial court granted the State's motion *in limine* prohibiting defense counsel from relating to the jury the minimum mandatory period of incarceration to which appellant could be exposed under the Habitual Offender Law. The defendant was convicted, and on appeal he maintained that, considering the State's clear and known intention to file a multiple offender bill alleging three predicate offenses, the defense should have been permitted to advise the jury that a conviction would result in a minimum mandatory sentence of twenty years flat time. The court of appeal found no merit to that claim:

Although the multiple bill carries a mandatory minimum, the filing of the multiple bill is optional with the State. In any event, the allegations of the multiple bill must be proved before the mandatory minimum sentence becomes an issue and under [*State v. Dorthey*, 623 So.2d 1276 (La. 1993)], the trial court has the discretion in not applying the mandatory minimum sentence if the facts warrant. Accordingly, any instruction or argument to the jury relative to the minimum sentence that a defendant could receive as a quadruple offender is within the discretion of the trial judge. Accordingly, this assignment is without merit.

*Dominick*, 94-1368, p. 5, 658 So.2d at 4. The State contends the Fourth Circuit thus held that no mention of a possible recidivist enhancement sentence was allowed, even when it was all but inevitable that a multiple offender bill would be filed.

Similarly, in *State v. Guillard*, 98-0504 (La. App. 4 Cir. 4/7/99), 736 So.2d 273, 278-79, the defendant asserted the trial court erred in failing to grant his motion for a mistrial due to the erroneous instructions gratuitously given to the jury regarding sentencing. He contended the trial court had volunteered information on the sentencing range for attempted possession of cocaine and erroneously stated he could get probation, when he was not eligible for probation as a putative third offender. Defense counsel requested a mistrial, which the trial court denied. The Fourth Circuit affirmed, reasoning as follows:

Appellant contends that the jury must be informed that the sentencing range differs for multiple offenders. In the instant case, appellant elected not to testify; thus, his prior convictions were not presented to the jury. Had the jury been instructed on the sentencing range for habitual offenders, the jury would have known that appellant had been previously convicted. Such result would violate his Fifth Amendment rights.

Furthermore, a possible adjudication as a habitual offender is a separate proceeding that punishes one for his status as a recidivist, not for the most recent conviction. Since a multiple offender bill of information is not mandatory, but at the discretion of the prosecutor, the possibility that appellant may later be subject to sentence enhancement as a recidivist is speculative. At the time of trial, no such bill had been filed, and there was no showing that even if one was filed later, that the State could prove appellant's status as a recidivist.

10

*Guillard*, 98-0504, p. 9, 736 So.2d at 278-79.

In *State v. Richardson*, 02-1207, pp. 2-5 (La. App. 4 Cir. 10/9/02), 830 So.2d 344, 345-46, the defendant moved for a mistrial, arguing statements made by the prosecutor and the trial judge that the defendant could be sentenced up to five years, and the prosecutor's statement implying the defendant could possibly walk out of court a free man, were improper. The district court denied the motion, reasoning the defendant had opened the door by stating in closing argument that he faced "a long time in prison," (presumably referring to the fact that the defendant was potentially a multiple offender), and the State was justified in responding to the defendant's assertion. The trial court found the defendant's tactics to be improper because his argument relied solely on sympathy, passion, prejudice, and bias, rather than facts, guilt, or the lack thereof. The Fourth Circuit affirmed the denial of the mistrial, reasoning as follows:

> The trial court did not err by allowing argument and instruction concerning the sentencing range without regard to a multiple bill. As the Louisiana Supreme Court found in *Jackson*, the choice to permit an argument about the penalty is within the discretion of the trial judge. Furthermore, while the state filed a habitual offender bill of information after defendant was convicted, no habitual offender hearing has been held. Under our ruling in *Guillard*, the state would still have to prove that defendant is a recidivist in order to increase his sentence and, thus, until that occurs, defendant's sentence remains within the original range. Therefore, in addition to the fact that defendant opened the door for a discussion on the sentencing range, the trial court's instruction on the sentencing range was not only within his discretion, but accurate.

*Richardson*, 02-1207, pp. 4-5, 830 So.2d at 346.

In addition to the Fourth Circuit jurisprudence, this court has recently addressed essentially the same issue presented in this case. In *State v. Lucien*, 16-715 (La. 4/19/16), 197 So.3d 689, the defendant was charged with possession with intent to distribute heroin, resisting an officer, and obstruction of justice. The State

filed a *Prieur* notice, indicating its intent to introduce evidence of two prior convictions for possession of heroin with intent to distribute and possession of cocaine with intent to distribute. The trial court granted the State's request to introduce evidence of the prior convictions. The trial court also ruled that, if the State introduces evidence of the prior convictions, the defense may inform the jury that the defendant faces a life sentence as a third offender under the Habitual Offender Law. The State sought writs, which the court of appeal denied. In this court, the State filed a writ application seeking to prohibit the defendant from mentioning that he faced the possibility of a life sentence (1) if convicted and (2) if the State filed a multiple offender bill and prevailed. This court summarily granted the State's writ application with the following order, specifically finding the trial court had abused its discretion in its ruling:

> Granted. We find the district court abused its discretion. The ruling of the district court is reversed insofar as it permits the defendant to inform the jury of the possible sentence faced by the defendant if defendant is convicted and the state successfully pursues recidivist sentence enhancement. The matter is remanded to the district court for further proceedings consistent with this order.

*Lucien*, 16-715, p.1, 197 So.3d 689-90.

In the instant case, the trial court gave reasons for denying the State's motion *in limine*. In an explanatory *per curiam*, the trial court framed the issue in terms of "whether it has abused its discretion to allow mentioning to the jury that, if convicted, the defendant could receive a minimum sentence pursuant to the habitual offender law." The trial court cited *State v. Dominick*, 94-1368, p. 5, 658 So.2d at 3, and *State v. Jackson*, 450 So.2d at 633-34. The trial court indicated its belief that "it is clearly misleading for the state to agree with mentioning before the jury, the mandatory minimum sentence of defendant's instant charge, but not the

12

mandatory minimum sentence imposed pursuant to the habitual offender law." The trial court elaborated:

> Although the filing of the multiple bill is optional with the state, if the allegations are proven, this court is unpersuaded that the state will not vigorously pursue the allegations set forth in a multiple bill so that the mandatory minimum could apply to defendant's sentence. More particularly, since the defendant has four open cases before this court, in this instance, the court exercises its discretion because the court finds that the interest of justice is not served if the State is allowed to "have its cake and eat it too."

The trial court summed up the State's strategy as follows: "Apparently, the State seems content to utilize the options of insinuating the filing of a multiple bill during plea negotiations, but hiding its hand when the defendant exercises his constitutional right to proceed to trial." The trial court concluded, stating: "Given the facts, the law, arguments of counsel, and the totality of the circumstances in this case, this court finds that the ruling was a fair and legal decision well within the court's discretion and at no time did the court in any way abuse its discretion."

The court of appeal denied the State's writ application. The dissenting judge found "that the issue of *possible* sentences which may be imposed *if* the State pursues a multiple bill against the defendant is too attenuated from the guilt phase of the trial to be discussed in front of the jury." *State v. Guidry*, 16-0763 (La. App. 4 Cir. 07/27/16) (unpublished), Lobrano, J., dissenting (emphasis in original). The dissenting judge would have found the trial court's ruling was "an abuse of discretion 'insofar as it permits the defendant to inform the jury of the possible sentence faced by defendant if defendant is convicted and the state successfully pursues recidivist sentence enhancement.' *State v. Michael Lucien*, 2016-KK-0715 (La. 4/19/16)." *Id.*

The issue presented is whether the trial court may allow a criminal jury to be informed of the possible mandatory minimum sentence faced by him if, after a

conviction on the offense being tried, he were to be sentenced as a multiple offender under the Habitual Offender Law. The trial court found it dispositive that the State in all likelihood would file a multiple offender bill if the defendant went to trial, and the State had used the high probability of an enhanced sentence in an attempt to leverage a guilty plea. The defendant similarly contends the Orleans Parish District Attorney's Office routinely chooses to exercise its discretion to file a multiple offender bill at rates significantly higher than other parishes. That the District Attorney raises the possibility of an enhanced sentence with a mandatory minimum is, to the defense, an unfair advantage in plea negotiations. The jurisprudence resulting in *Jackson*, the defendant argues, manifests the concern the courts had in the 1970s and 1980s about the trend toward legislatively-determined mandatory minimum sentences, which removed the discretion historically afforded to judges during sentencing.

We find no merit to the defendant's arguments. Even if the State is certain to eventually file a multiple offender bill, we do not find this fact dispositive in favor of informing the jury of the possible mandatory minimum sentences if the allegations in the multiple offender bill are sufficiently proven. Similarly, because the State has outlined the consequences of a multiple offender bill during plea negotiations does not translate into an unfair advantage to the State, such that the jury should necessarily be informed of the possible sentences under the Habitual Offender Law.

A multiple offender bill is generally not filed until after conviction, such that it does not logically constitute the "law of the case" for the subject offense at trial as it pertains to the scope of the jury's duty as the factfinder. The jury has no role in the enhancement of a sentence under the Habitual Offender Law, because once

14

the multiple offender bill is filed after conviction, the adversarial hearing is conducted before the judge and the State must prove to the judge the allegations in the multiple offender bill. The principle that legal matters irrelevant to guilt should not be pressed upon the jury, which we explained in *Harris*, 258 La. at 729-31, 247 So.2d 850-51, applies even more forcefully in the context of the Habitual Offender Law. It is axiomatic that, if the trial court has not yet conducted a sentencing hearing, any sentence as a multiple offender is speculative and indeterminate. As the *Guillard* court noted, "a possible adjudication as a habitual offender is a separate proceeding that punishes one for his status as a recidivist, not for the most recent conviction." 98-0504, p. 9, 736 So.2d at 278-79. Thus, the defendant's status as a putative multiple offender is irrelevant to the determination of guilt or innocence of the tried offense. Allowing the jury to be informed of the potential mandatory minimum sentences if and when the defendant is proven to be a second, third, or fourth felony offender has the potential to shift the focus of the jury from a determination of guilt or innocence to issues regarding sentencing. Such a shift would likely confuse the issues for which the jury is responsible and invite jurors to speculate about sentencing, including why a particular defendant is facing such a term of imprisonment.[3] In sum, the issue of possible mandatory minimum sentences that could be imposed if the State successfully pursues enhancement through a multiple offender bill is too far attenuated from the guilt phase of trial to be discussed before a jury.

We thus hold that to allow such disclosure constitutes error. The jurisprudence culminating in the *Jackson* rule developed outside of the context of the Habitual Offender Law. The defendant asserts the non-mandatory nature of

---

[3] As the *Guillard* court also noted, informing the jury of the fact of the defendant's prior convictions, when he has not taken the stand, raises important constitutional issues.

15

such enhanced sentencing should be subject to the same jurisprudential rules, and therefore should be subject to the same discretion of a trial court to permit the jury to be made aware of the potential sentence as a multiple offender. However, because the jury has no constitutional or statutory role in the enhancement of a sentence under the Habitual Offender Law, we find the trial court erred in allowing a jury to be informed of the possible sentence should the defendant be convicted and his sentence enhanced under the Habitual Offender Law. Accordingly, the district court's ruling is reversed, the stay issued by this court is hereby lifted, and the matter is remanded to the district court for further proceedings.

**REVERSED; STAY LIFTED; REMANDED**

SUPREME COURT OF LOUISIANA

No. 16-KK-1412

STATE OF LOUISIANA

VS.

COREI K. GUIDRY

ON SUPERVISORY WRIT FROM THE CRIMINAL DISTRICT COURT,
PARISH OF ORLEANS

**Johnson, Chief Justice, dissents and assigns reasons**

I respectfully dissent and would deny the writ because the state has shown no abuse of discretion in the trial court's denial of the state's motion to prohibit the defense from referencing the possible life sentence that defendant will all but certainly face if convicted and adjudged a habitual offender.

It has long been settled that it is within the trial judge's discretion, in instances in which a specific punishment is not statutorily mandated, to permit or deny instruction or argument as to sentencing.[1] The majority has accepted the invitation of the Orleans Parish District Attorney's Office to establish a new *per se* rule which will substantially limit trial court discretion to control the information given to the jury. Under this new rule, any reference—whether by the court or in argument from

---

[1] *See State v. Jackson*, 450 So.2d 621, 633–34 (La. 1984); *State v. Williams*, 420 So.2d 1116, 1122 (La. 1982); *State v. Dawson*, 392 So.2d 445, 447–48 (La. 1980) (rejecting as meritless the argument that the trial court erred when it instructed jury as to the "irrelevant" penalties for responsive verdicts, in addition to the mandatory sentence for the charged offense, because the "charge to the jury concerning the penalties for the responsive verdicts was within the trial court's discretion."); *State v. Bell*, 377 So.2d 275, 282 (La. 1979) (within trial court discretion whether to refuse argument involving penalties); *State v. Blackwell*, 298 So.2d 798, 804 (La. 1973) ("Our law does not require that the judge charge the jury on penalty, nor, however, does it prohibit such a charge."); *see also State v. Cooper*, 96-0119, p. 12 (La. App. 3 Cir. 7/17/96), 678 So.2d 59, 66 (decision to include in the jury instructions the penalties for the charged offense and for all lesser included offenses rested within the trial judge's discretion), *writ denied*, 96-2121 (La. 1/24/97), 686 So.2d 857.

the parties—to the enhanced sentence a defendant will face if he is convicted and adjudged a habitual offender, will be impermissible, unless perhaps the defendant elects to testify and subject himself to cross-examination about his prior convictions.

The trial court has the discretion to permit or prohibit references to sentencing, other than for those sentences automatically mandated by statute, because the trial judge sits in the best position to determine whether the penalty provisions at issue, including those applicable under the Habitual Offender Law, constitute "law applicable to the case,"[2] of which the jury should be apprised under the circumstances of the particular prosecution.

I am unpersuaded that the trial court abused its discretion here by refusing to prohibit the defense from referencing the potential habitual offender sentence, especially in light of the overwhelming evidence that the Orleans Parish District Attorney's Office almost reflexively (through his assistant district attorneys) institutes habitual offender proceedings upon securing the conviction at trial of a defendant with a prior felony. The prosecuting attorneys in Orleans Parish routinely wield the Habitual Offender Law, both during pre-trial plea negotiations and, in the event that tactic fails to yield a guilty plea, after obtaining a conviction at trial, to secure the harsher punishment of even non-violent offenders.

The Pew Charitable Trusts have examined the Habitual Offender Law and its impact on Louisiana's incarceration rate[3] and found the number of newly-sentenced

---

[2] *See* La.C.Cr.P. art. 774 ("The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, *and to the law applicable to the case*.") (emphasis added); *cf.* La.C.Cr.P. art. 802 (the court shall charge the jury as to the law applicable to the case).

[3] The study was conducted in accordance with House Bill 82 of the 2016 Legislative Session convening the Justice Reinvestment Task Force. The Task Force has been charged to analyze the drivers of the state's prison population. Surveying 10 years of data from the Department of Corrections and Public Safety, Pew has concluded that offenders sentenced under the habitual offender law represent a small yet growing share of prison admissions. *See* Pew Charitable Trusts, *Louisiana Data Analysis Part II: Prison Trends Cont.* (September 23, 2016) (citing Department of Corrections data from 2006–15).

defendants who have received substantially enhanced punishments under the law has more than doubled over the past 10 years.[4] Even more concerning, the majority of these defendants come from just a handful of parishes. The biggest contributor, by far, has been Orleans Parish. In 2015, Orleans Parish surpassed every other judicial district in the state in its use of the Habitual Offender Law, sending 154 offenders to serve lengthy prison sentences.[5] This figure reflects a shocking 15-fold increase over the year 2006, during which just 10 offenders from Orleans Parish were sentenced under the law.[6] Although the law represents an important means of protecting public safety and punishing recidivism, this data reveals the unfortunate truth that the weightiest penalties are not being reserved for the most serious crimes or the most dangerous offenders, particularly in Orleans Parish. To the contrary, drug possession is the most common primary offense for newly-sentenced prisoners convicted under the Habitual Offender Law.[7] According to the Louisiana Legislative Auditor's Office, 78% of habitual offender convictions are for non-violent offenses, though some of those offenders may have had prior violent offenses.[8] Given these facts, it can hardly be labeled as mere conjecture that the District Attorney's Office will again invoke the Habitual Offender Law if it obtains a conviction in this case.

---

[4] While in 2006, 157 prisoners faced enhanced punishment under the law, the number of defendants sentenced as recidivists had risen to 365 by 2015. *Id.*

[5] *Id.*

[6] In comparison, the Pew data shows that Jefferson Parish District Attorney Paul Connick convicted 116 offenders under this statute in 2015, while St. Tammany and Washington Parish charted a combined 64 newly-sentenced prisoners under the habitual offender law. None of the other 39 parishes in the state sentenced more than 3 people as habitual offenders last year. *Id.*

[7] 2015 Department of Corrections data shows that nearly three quarters of habitual offender admissions have a primary drug or property offense, while just 14% have a violent primary offense, with 10% being defined as other.

[8] Louisiana Legislative Auditor, *Evaluation of Strategies to Reduce Louisiana's Incarceration Rate and Costs for Nonviolent Offenders* (Aug. 31, 2016), available online as of Feb. 6, 2017 at https://app.lla.state.la.us/PublicReports.nsf/DB26F2309F9783F2862580200077A2CD/ $FILE/00010B73.pdf.

I also find it fundamentally unfair that the District Attorney has apparently adopted a policy by which his staff leverage the threat of enhanced punishment while seeking to extract guilty pleas with one hand, as was done in this case, while later seeking with the other hand to vigorously keep a defendant who has elected to exercise his right to a jury trial from mentioning the life sentence he will face if convicted and adjudged as a recidivist, by arguing that the possibility of such an enhanced sentence is simply too remote.

Even granting that a habitual offender hearing constitutes a separate proceeding, to conclude that the jury is an unfit audience for any references to the potential habitual offender sentence, because that putative fate is too attenuated from the case at bar, is to ignore the reality reflected in the statistics above. Though the majority portrays habitual offender proceedings as involving arduous hurdles for the state, Louisiana jurisprudence is plain that if the state files a habitual offender bill of information, as it has already indicated its intent to do here if it obtains conviction at trial, the trial court will have little option but to impose an enhanced punishment as mandated by R.S. 15:529.1, as long as the state has presented "any competent evidence" of defendant's prior felony convictions and his identity as the person convicted. *State v. White*, 13-1525, p. 2 (La. 11/8/13), 130 So.3d 298, 300.[9] In this way, the highly likely sentencing outcome here appears more akin to those in the cases in which this Court has found that the judge must inform the jury of the sentence; a rule founded on the premise that the jury is entitled to know the certain consequences of its verdict. *See State v. Milby*, 345 So.2d 18, 21 (La. 1977) ("[If],

---

[9] In *White*, the Court explained that "[t]o meet its burden under the Habitual Offender Act, the State must establish both the prior felony conviction and the defendant's identity as the same person who committed that prior felony," but made abundantly clear that the habitual offender law does not require any specific type of evidence to satisfy the state's burden at the habitual offender hearing. Rather, the defendant's prior convictions "may be proved by any competent evidence." *Id.*, 13-1525, p. 2, 130 So.3d at 300.

upon conviction, the trial judge must impose a mandatory sentence[,] . . . the trial court is required, upon request of the defendant, to charge with regard to a mandatory penalty, because then the penalty is in effect determined by the jury rather than by the judge.").

Finally, to the extent the majority expresses concern about allowing mention of a habitual offender sentence because it would infringe upon the right against self-incrimination, I find its concern misguided. A defendant who has elected to stand trial may waive his right not to incriminate himself. The most common and direct means of such a waiver is by his taking the stand and testifying, however, neither the state nor the majority specify any authority providing that this is the sole means of effecting the waiver. Furthermore, I reject the notion that a right that is intended to protect a defendant may be used against him by the prosecution in this manner, *i.e.*, to keep what appears to be an all-but-inevitable habitual offender sentence from the jury under the pretense of effectuating this Fifth Amendment protection. Even the state has conceded that in cases in which a defendant elects to testify (a fact which remains to be seen here) and thereby expose himself to cross-examination about past convictions, he would thereafter be entitled to reference any enhanced punishment he would face as a recidivist.

Because the Louisiana jurisprudence is clear that it is within a trial judge's discretion to permit instruction or argument as to sentencing in a case like this, and because the state has not shown any convincing reason specific to this case (let alone one which would not also apply in any number of prosecutions in Orleans Parish) that the trial court abused its discretion, I would deny the state's writ and leave intact the trial court's ruling. The majority's new rule will only foster the continued overuse of the Habitual Offender Law at a time when our state can scarcely afford it.

5

In fiscal year 2015, Louisiana spent over $680 million on incarceration, an increase of more than $25 million over the prior year.[10] Continued abuse of the Habitual Offender Law serves only to exacerbate this already unsustainable burden that Louisiana taxpayers have been forced to shoulder to incarcerate more offenders than any other state, per capita. As I explained in *State v. Johnson*, 96-3041 (La. 3/4/98), 709 So.2d 679, 682, the Habitual Offender Law serves no worthwhile goal when, as appears likely in the instant case, it is used to extract a disproportionately harsh punishment for a less serious offense.

I am still amazed that the defendant in *Johnson*, 96-3041, *supra*, is required to serve a shockingly disproportionate sentence of 26 years and eight months, a punishment which effectively requires that he spend the bulk of his remaining years in prison, merely for stealing a cheap pair of shoes. I will feel a similar sense of shock and dismay if the defendant here is ultimately sentenced to life as a habitual offender for a narcotics offense. The time has long since come for us to stop adding to the overflowing ranks of those sentenced to extremely lengthy terms for property and drug crimes. I remain firmly convinced that such results are not only draconian, but an unjustified waste of taxpayer dollars that violate the constitutional prohibition on excessive punishment. *See, e.g.*, *State v. Muhammad*, 03-2991, p. 1 (La. 5/25/04), 875 So.2d 45, 57 (Johnson, J., dissenting) (within days of completing his original net term of four years imprisonment for access device fraud, essentially "identity theft," the state filed a habitual offender bill and defendant was adjudged a recidivist and resentenced to life imprisonment, a sentence possibly more cruel than the punishment meted out in countries that "mandate chopping off a hand as the penalty for theft."); *State v. Parker*, 03-0924, p. 1 (La. 4/14/04), 871 So.2d 317, 329 (Johnson, J. dissenting). The jail space that defendant will all but certainly occupy

---

[10] Legislative Auditor, *Evaluation of Strategies*, *supra*.

for the remainder of his life, if found guilty and adjudged a recidivist, should instead be reserved for a violent criminal. Now, more than ever, we must abandon all practices which result in condemnation to a life behind bars for anyone other than the most dangerous among us.

03/15/17

# SUPREME COURT OF LOUISIANA

## NO. 2016-KK-1412

## STATE OF LOUISIANA

## VERSUS

## COREI K. GUIDRY

*ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT COURT
FOR THE PARISH OF ORLEANS*

**WEIMER, J.**, dissenting.

The singular issue in this case, *i.e.*, whether the district court may inform the jury of potential sentencing under the Habitual Offender Law, has no specific statutory law that may be consulted for its resolution. The Habitual Offender Law does not speak to the issue; neither does the Code of Criminal Procedure–at least not directly. Thus, the court is left with general legislative propositions for guidance. For example: "A court possesses inherently all powers necessary for the exercise of its jurisdiction ... . It has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done." La. C.Cr.P. art. 17. See also La. C.Cr.P. art. 774 (indicating "the law applicable to the case" is a proper topic of argument at trial); and La. C.Cr.P. art. 802 (requiring the court to charge the jury "[a]s to the law applicable to the case"). It has long been recognized that pursuant to La. C.Cr.P. art. 17, discretion is afforded to courts in matters such as this one, in which courts are called on to regulate proceedings in the interest of justice and in the absence of more specific legislative guidance. See **State v. Reeves**, 263 La. 923, 269 So.2d 815, 816 (1972).

In my view, there is simply not enough information to reach the majority's conclusion that "a multiple offender bill is far too attenuated from the guilt phase of trial to be discussed before a jury." **State v. Guidry**, 16-1412, slip op. at 15 (La. 3/14/17). What this court has been informed, by the district court, regarding the prospects of a multiple offender bill is this: "Although the filing of the multiple bill is optional with the state, if the allegations are proven, this court is unpersuaded that the state will not vigorously pursue the allegations set forth in a multiple bill so that the mandatory minimum could apply to defendant's sentence." *Id.*, 16-1412, slip op. at 13 (reproducing an excerpt of the district court's explanatory per curiam opinion).

During oral argument before this court, there was great debate–but no reference to record evidence–regarding the prevalence of multiple offender billing in this particular jurisdiction. In light of the district court's remarks, I am unwilling to decide that the interests of justice, as described in La. C.Cr.P. art. 17, have not been served by the district court's ruling.

I do not mean to imply that the issue here is simple. There are excellent arguments on either side of the issue of whether a court should have discretion to inform the jury of multiple offender sentencing, as recounted by the majority. The difficulty of the issue of informing the jury of a non-mandatory sentence was also foreshadowed by this court's initial vacillation, before settling on the current rule in favor of allowing discretion, some 30 years ago. See **State v. Jackson**, 450 So.2d 621, 633-34 (La. 1984). Since that time, the legislature has not altered that rule, apparently finding no disagreement with this court's determination to resolve the issue on a case-by-case basis with discretion afforded to the trial judge, who is most familiar with all the facts and circumstances. The utilization of habitual offender

2

billing presents a different twist on this issue, but before straying too far from the long-standing rule by essentially making a new, bright-line rule that removes discretion from trial judges without all the facts to justify such a rule, I believe it is important to know more information related to the utilization of the multiple offender provisions.

Accordingly, I would remand this matter for an evidentiary hearing. Inasmuch as the majority has announced the standard of "attenuation" for deciding cases such as this one, both the prosecution and defense should be afforded the opportunity to make an evidentiary record as to whether multiple offender adjudication is truly attenuated in this particular case. Absent such a hearing, we cannot fully evaluate how attenuated a multiple offender bill may be here or whether the district court abused its discretion in ruling that the jury would be informed of sentencing under a multiple offender bill.

In conclusion, I do not disagree with the majority's "attenuation" standard; I find that standard consonant with our prior jurisprudence allowing the exercise of discretion. However, I do not join that part of the ruling that decides the attenuation issue without evidence, or that part of the ruling that appears to hold that a court never has discretion to disclose possible sentencing through a multiple offender bill. Remanding for an evidentiary hearing, in my view, would allow the district court to adjudicate this case under the newly announced attenuation standard and, as necessary, would allow more informed supervisory and/or appellate review. Thus, I respectfully dissent.

SUPREME COURT OF LOUISIANA

No. 2016-KK-1412

STATE OF LOUISIANA

VERSUS

COREI K. GUIDRY

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

**GUIDRY, Justice, additionally concurs and assigns reasons.**

While I subscribe to the majority opinion's holding that *State v. Jackson*, 450 So.2d 621 (La. 1984), should not be extended to allow the jury to be informed regarding potential mandatory minimum sentences under the Habitual Offender Law, I would go further and reverse *Jackson* and its earlier iteration in *State v. Milby*, 345 So.2d 18 (La. 1977). In my view, the court in *State v. Harris*, 258 La. 720, 247 So.2d 847 (1971), having examined the meaning of "the law applicable to the case" to determine whether sentencing falls within the scope of La. Code Crim. Proc. 774 and 802, correctly stated the law: when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for disclosure to the jury. *Harris*, 258 La. at 731, 247 So.2d at 855. Though the court on rehearing in *State v. Blackwell*, 298 So.2d 798 (La. 1974), reaffirmed *Harris*, it subsequently began to go astray in *State v. Prater*, 337 So.2d 1107 (La. 1976), albeit reaching the correct result in that case, and ultimately departed from strict application of the law in *Milby* and later *Jackson*, when neither the constitution nor statutory law regarding the role of the jury in non-capital cases had changed. I would thus apply the law as written, and return to the rule as articulated in *Harris*: Aside from capital cases, it is the duty of the jury to determine the guilt or innocence of the

1

accused based on the evidence adduced, and in the event of conviction, it is the duty of the judge, and not the jury, to impose sentence. Because affixing the punishment for conviction is solely within the province of the judge, it is of no concern to the jury, and therefore should not be disclosed to the jury whether in the judge's charge or counsel's argument. *See Harris*, 258 La. at 731, 247 So.2d at 855.

**SUPREME COURT OF LOUISIANA**

**No. 2016-KK-1412**

**STATE OF LOUISIANA**

**VERSUS**

**COREI K. GUIDRY**

**ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS**

**CRICHTON, J., additionally concurs and assigns reasons.**

I agree with the majority's treatment of the narrow issue presented by this case. However, I write separately to voice my support of Justice Guidry's additional concurrence, specifically his view that the current jurisprudence subverts the will of the legislature. The Louisiana Constitution imbues the legislature with the sole authority to define conduct as criminal and provide penalties for such conduct. La. Const. art. 3, § I;; *State v. Taylor*, 479 So.2d 339, 341 (La. 1985). As noted by the majority in its opinion, "the jury is the judge of the law and of the facts on the question of guilt or innocence," but the court imposes the penalty in non-capital cases. La. C.Cr.P. arts. 802, 871. It is my view that the jurisprudential rule prior to the developments that culminated in *State v. Jackson*, 450 So.2d 621 (La. 1984), more correctly interpreted and articulated these statutory edicts: "when the penalty is the responsibility of the judge alone, the sentencing law is an improper subject for argument to the jury." *State v. Harris,* 258 La. 720, 731, 247 So.2d 847, 851 (1971). Thus, and should litigants challenge the broader issue of jurors and sentencing in the future, it is my view that this Court should examine whether or not to overrule existing precedent and revert to the standard set forth by this Court in the 1971 *Harris* opinion.

1

However, I also embrace Chief Justice Johnson's view, articulated in this case and many others, that the abusive frequency with which a *de minimis* number of jurisdictions invoke habitual offender laws against non-violent actors appears to do little to protect the people of Louisiana, and depletes the already scarce fiscal resources of this state. I further agree with Chief Justice Johnson's view that the imposition of life sentences on non-violent offenders at a certain point lacks any meaningful social value and may constitute aberrant cruelty. *See*, *e.g. State v. Lindsey*, 99-3302 (La. 10/17/00), 770 So.2d 339 (Johnson, J., dissenting); *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672 (Johnson, J., dissenting); *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518 (Johnson, J., dissenting); *State v. Parker*, 03-0924 (La. 4/14/04), 871 So.2d 317 (Johnson, J., dissenting); *Kimbrough v. Cooper*, 05-2335 (La. 11/22/05), 915 So.2d 344 (Johnson, J., concurring in part and dissenting in part); *State v. Johnson*, 96-3041 (La. 3/4/98), 709 So.2d 679 (Johnson, J., dissenting).

The Eighth Amendment to the United States Constitution as well as the laws of this state forbid grossly disproportionate sentences and the needless infliction of pain and suffering. *See State v. Lobato*, 603 So.2d 739, 751 (La.1992), citing *State v. Bonanno*, 384 So.2d 355 (La.1980). A sentence may be considered grossly disproportionate if, when weighed against the harm done to society, it shocks the sense of justice. *See Lobato*, 603 So.2d at 751, citing *State v. Hogan*, 480 So.2d 288 (La.1985). I believe we have arrived at a moment where this Court should examine whether or not the abuse of habitual offender laws by a handful of jurisdictions violates these constitutional prerogatives. However, as noted throughout this concurrence, I do not believe the appropriate remedy for curbing state abuse of La. R.S. 15:529.1 lies with the jury, but rather with the trial court judge. Thus, if a defendant believes that the state has abused its prosecutorial discretion in filing a habitual offender bill such that it seeks to impose an

unconstitutionally excessive sentence, the defendant should move the court at the sentencing hearing to depart downward from the mandatory minimum as permitted by *State v. Dorthey*, 623 So.2d 1276 (La. 1993), and, if justice requires, the court ought to grant it. *See*, *e.g.*, *State v. Mosby*, 14-2704 (La. 11/20/15), 180 So.3d 1274 (Citing *Dorthey*, this Court determined that the imposition of a 30-year term of imprisonment on a non-violent offender who was 72 years old and infirm was "grossly out of proportion to the severity of the offense" and amounted to nothing more than the "purposeful imposition of pain and suffering.").

SUPREME COURT OF LOUISIANA

No. 2016-KK-1412

STATE OF LOUISIANA

VERSUS

COREI K. GUIDRY

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS


**GENOVESE, J.,** additionally concurs for the reasons assigned by Justice Guidry

and Justice Crichton.